*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KELSEY P. GEORGE, | ) | |
| | ) | Supreme Court No. S-15618 |
| Petitioner, | ) | Court of Appeals No. A-11028 |
| | ) | |
| v. | ) | Superior Court No. 3GL-09-00231 CR |
| | ) | |
| STATE OF ALASKA, | ) | O P I N I O N |
| | ) | |
| Respondent. | ) | No. 7072 – December 18, 2015 |
| _____ | ) | |

Petition for Hearing from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Third Judicial District, Glenallen, Eric Smith, Judge.

Appearances: Dan S. Bair, Assistant Public Advocate, and Richard Allen, Alaska Public Advocate, Anchorage, for Appellant. Timothy W. Terrell, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Fabe, Maassen, and Bolger, Justices. [Winfree, Justice, not participating.]

STOWERS, Chief Justice.

## I. INTRODUCTION

Kelsey P. George was convicted of four counts of sexual abuse of a minor in the first degree, three counts of sexual abuse of a minor in the second degree, and one count of attempted sexual abuse of a minor in the first degree. George appealed, challenging one of the first-degree sexual abuse counts (Count Ten) and the attempted

sexual abuse count (Count One). The court of appeals affirmed his convictions on both counts,[1] and George filed a petition for hearing regarding the sufficiency of the evidence supporting the conviction on Count Ten, which we granted.[2]

We conclude that the evidence was insufficient to convict George on Count Ten. Therefore, we reverse the court of appeals' decision in part, and we remand this matter to the superior court for entry of a judgment of acquittal on Count Ten.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

George was indicted in December 2009 on one count of attempted sexual abuse of a minor in the first degree[3] and three counts of sexual abuse of a minor in the second degree.[4] These charges involved two victims, T.E. and M.G. In November 2010 the grand jury indicted George on five new counts of sexual abuse of a minor in the first degree.[5] These new counts all involved one victim, A.M. George's petition only involves the allegations related to A.M.

The State charged George with three different types of sexual abuse of A.M. occurring during two different time periods. The charges were as follows:

- Count Five: Sexual penetration, fellatio, between September 2005 and May 2006;

---

[1]    *George v. State*, No. A-11028, 2014 WL 2937874 (Alaska App. June 25, 2014).

[2]    *George v. State*, No. S-15618 (Alaska Supreme Court Order, Oct. 1, 2014).

[3]    AS 11.41.434(a)(1).

[4]    AS 11.41.436(a)(1).

[5]    AS 11.41.434(a)(1).

- Count Six: Sexual penetration, penis to vagina, between September 2005 and May 2006;

- Count Seven: Sexual penetration, penis to vagina, between September 2005 and May 2006;

- Count Eight: Sexual penetration, digital penetration, between September 2005 and May 2006; and

- Count Ten:[6] Sexual penetration, digital penetration, between September 2004 and May 2005.

The only count at issue in this appeal is Count Ten, which charged George with digitally penetrating A.M. during her third-grade year when she was between eight and nine years old. Supporting George's indictment on Count Ten was A.M.'s testimony before the grand jury that George had abused her by digital penetration when she was in third grade.

## B.    George's Trial

The State introduced three main pieces of evidence at trial regarding George's abuse of A.M.: A.M.'s live testimony, A.M.'s forensic interview,[7] and George's interview.

A.M. testified that she frequently stayed with her aunt, Marina, when A.M.'s grandparents (with whom A.M. lived) went out of town. George lived with Marina. A.M. stated that she last stayed with Marina when A.M. was in fourth grade or

---

[6]    The indictment did not contain a ninth count. However, the jury instructions, judgment, and parts of the trial refer to Count Nine. These references to Count Nine correspond to Count Ten in the indictment and this opinion.

[7]    The forensic interviewer also testified that A.M. had stated in the interview that the abuse "started when she was in Head Start, and . . . ended when she moved to Anchorage [in the fourth grade], except for that one incident in Anchorage which was fourth grade." Because the interviewer was merely recounting what A.M. stated in the interview, we rely only on A.M.'s interview itself and not on the interviewer's recollection of what A.M. said during the interview.

when A.M. was nine or ten years old.  A.M. testified that she could not recall if she had stayed with Marina during the third grade.

A.M. indicated that George would come into her room when she stayed with Marina and that when George came into her room "[h]e would touch [her]."  She stated that he first touched her when she was four.  The prosecutor then asked her, "Do you remember him touching you when you were in the fourth grade?"  A.M. stated that she did, and she proceeded to describe George abusing her by engaging in digital penetration.  The prosecutor then changed focus, asking if George had touched her with anything other than his hands.  A.M. testified that George had also made her engage in fellatio.  She stated,

> A: (Pause) He would make me put it in my mouth.
>
> Q: He'd put his — he'd make you put it in your mouth?
>
> A: (Pause)
>
> Q: Okay.  And was that in the third grade?
>
> A: (Pause) (Indiscernable).
>
> Q: Or was that the fourth grade?
>
> A: Third grade, I think.
>
> Q: Third grade.  Did that also — did that happen in the fourth grade as well?
>
> A: (Pause) Hmmm.
>
> Q: Yeah?
>
> A: (Pause)
>
> Q: Was that a yes?
>
> A: No.
>
> Q: No, okay.  Just the third grade?
>
> A: (Pause)

After the prosecutor attempted to refresh A.M.'s recollection by showing her the grand jury transcript, the following exchange took place:

> Q: And so did that happen in the fourth grade as well?
>
> A: (Pause) It was the fourth grade but like — it wasn't quite the year didn't quite start yet.

A.M. then testified that George had engaged in penis-to-vagina penetration with her during her fourth-grade year.

The State also introduced portions of A.M.'s forensic interview. During this interview A.M. stated that George would touch her "every night" when she was "little," clarifying later that she meant when she was five or six years old. She also indicated that "every night" she was at Marina's, George would make her engage in fellatio and penis-to-vagina penetration. Although A.M. initially stated that the abuse stopped when she moved to Anchorage in or right after the fourth grade, she later recalled an incident that occurred after the move to Anchorage. But she stated that she could not "remember . . . well" if George "[did] anything with his fingers when he touche[d] [her] crotch." She also testified regarding one incident where George was found "holding [her] crotch and [her] boobs," and she stated he was told "not to do it again but he still did it."

The jury also heard an edited version of George's police interview. During George's interview he claimed that A.M. had him engage in digital penetration with her. George claimed that this contact occurred when A.M. was ten and in Anchorage. He also admitted to an incident when A.M. was four. George claimed that A.M. was "the one that actually did everything to [him]," and that the sexual abuse of A.M. occurred "when [he] was living with Marina."

The State also introduced a December 2009 interview with T.E. T.E. stated that George attempted to put his hands down her underwear and that there was skin-to-

skin contact but that George did not touch her "private parts." At trial, T.E. confirmed that George put his fingers under her clothing, and she marked on a diagram indicating that she felt George touch her groin.

Relevant to George's abuse of A.M., T.E. was asked in her 2009 interview if she believed that anyone else had been abused. T.E. indicated that she believed George had also abused A.M. in 2007 or possibly earlier.

The jury found George guilty on all but one count, and Superior Court Judge Eric Smith sentenced George to a total of 56 years' imprisonment with 22 years suspended. On Count Ten, George received a sentence of eight years with two years to be served consecutively to Count One[8] and the remainder to be served concurrently.

### C. George's Appeal To The Court Of Appeals

George appealed to the court of appeals,[9] arguing in part that the evidence was insufficient to support a conviction for digital penetration during A.M.'s third-grade year.[10] The court of appeals reviewed the record and concluded that "it appears (1) that the prosecutor was under a misimpression about the timing of the offense, and (2) that A.M.'s ensuing testimony was actually about events that occurred during her *third-grade* year."[11]

The court of appeals summarized the facts as follows:

---

[8] Count One was attempted sexual abuse of a minor in the first degree. George received a sentence of thirty years with ten years suspended.

[9] *George v. State*, No. A-11028, 2014 WL 2937874, at *1 (Alaska App. June 25, 2014).

[10] *Id.* at *4.

[11] *Id.* (emphasis in original).

George was living with A.M.'s aunt. A.M. testified that her aunt used to babysit her . . . from the time she was quite young until her fourth[-]grade year . . . .

A.M. further testified that, on the nights when she would stay at her aunt's house, George would come into her bedroom and touch her. According to A.M., this touching started when she was four years old and continued until she reached the fourth grade . . . . A.M. testified that, when George touched her, he would sometimes reach inside her vagina.

The prosecutor's mistake about the time frame of this sexual activity was clarified later in A.M.'s testimony, when she described how George would make her engage in fellatio. The prosecutor asked A.M. if this had happened when she was in the fourth grade, but A.M. repeatedly told the prosecutor that it happened when she was in the third grade.[12]

The court of appeals then quoted the same testimony we have quoted above[13] and held that

A.M. declared that the sexual abuse occurred when she was in the third grade . . . . Thus, viewing A.M.'s testimony as a whole, and in the light most favorable to the verdict, the jurors could reasonably conclude that George engaged in digital penetration of A.M. during . . . (September 2004 to May 2005).[14]

The court of appeals thus affirmed George's conviction on Count Ten.[15]

George petitioned for hearing, and we granted the petition.

---

[12]    *Id.* at *4-5.

[13]    *See* § II.B, *supra*.

[14]    *George*, 2014 WL 2937874, at *5.

[15]    *Id.*

## III.  STANDARD OF REVIEW

"When we review the sufficiency of the evidence to support these convictions, we view the evidence in the light most favorable to the verdict and ask whether a reasonable juror could have concluded that the defendant was guilty beyond a reasonable doubt."[16] "The question . . . is whether the finding of guilt is supported by substantial evidence, that is, such relevant evidence which is adequate to support a conclusion by a reasonable mind that there was no reasonable doubt as to appellant's guilt."[17]

## IV.  DISCUSSION

George contends that the evidence presented was insufficient to convict him of digitally penetrating A.M. during her third-grade year.  The court of appeals nevertheless affirmed George's conviction on this count.  The State concedes that the court of appeals' reasoning is problematic, but the State argues that George's conviction can be sustained on a continuing course of conduct theory.  We consider both the court of appeals' decision and the State's continuing course of conduct theory.[18]  We find neither rationale persuasive.

---

[16]     *Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012).

[17]     *Walker v. State*, 652 P.2d 88, 97 (Alaska 1982) (quoting *Beck v. State*, 408 P.2d 996, 997 (Alaska 1965)).

[18]     The State's decision not to rely on the court of appeals' opinion does not relieve this court of our duty to consider the court of appeals' reasoning. *See Marks v. State*, 496 P.2d 66, 67 (Alaska 1972) ("Although a confession of error by the Attorney General is entitled to great weight, it does not relieve this court of the obligation to perform [its] judicial function.").

**A.    The Evidence On Which The Court Of Appeals Relied Is Insufficient To Support George's Conviction On Count Ten.**

The court of appeals advanced two reasons supporting its conclusion that the evidence was sufficient to support George's conviction on Count Ten: the prosecutor's "misimpression about the timing of the offense"[19] and the belief that A.M.'s testimony regarding digital penetration "was actually about events that occurred during her *third-grade* year."[20]  We have carefully reviewed all of the evidence that could support George's conviction on Count Ten in conjunction with the court of appeals' analysis, and we conclude that the evidence does not support George's conviction on that count.

First, we conclude that the court's characterization of the prosecutor's misimpression regarding when the offense occurred has little bearing on our analysis. Moreover, we are not convinced that the prosecutor was confused.  The State needed to elicit testimony regarding digital penetration during A.M.'s fourth-grade year to support a conviction on Count Eight.  The State's initial question regarding the fourth-grade year appears intended to bring out exactly that information.  But the State failed to ask any follow-up questions about digital penetration during A.M.'s third-grade year.  In either case, the prosecutor's misunderstanding of the timing of events does not matter.  Instead, what matters is "whether a reasonable juror could have concluded that the defendant was guilty beyond a reasonable doubt."[21]

Turning to the court of appeals' characterization of A.M.'s testimony regarding digital penetration as being about events that occurred during her third-grade

---

[19]    *George*, 2014 WL 2937874, at *4.

[20]    *Id.* (emphasis in original).

[21]    *Iyapana*, 284 P.3d at 848-49.

year, we find that the structure of the questions and responses in A.M.'s testimony does not support the court of appeals' interpretation.

The State began eliciting testimony regarding the individual acts of abuse by asking A.M. if she remembered how old she was the first time George touched her. A.M. testified that she was four at the time. The prosecutor then asked "Four, okay. Do you remember him touching you *when you were in the fourth grade*?" (Emphasis added.) In response, A.M. described George digitally penetrating her.

The State next asked if George "use[d] anything else to touch [A.M.'s] body with." A.M. described George forcing her to engage in fellatio. The State then addressed the question of timing, asking, "Okay. And was that in the third grade? . . . Or was that in the fourth grade?" A.M. responded that this conduct happened in the third grade.

The central question in interpreting A.M.'s testimony is what the word "that" refers to in the State's question. We read the court of appeals' decision as interpreting "that" as referring to both digital penetration and fellatio.[22]

The State concedes that the court of appeals' interpretation was erroneous. In its brief, the State agreed with George that "the court of appeals' interpretation of the jury's verdict on Count [Ten] suffers from . . . flaws" and "that the court's interpretation of the record was based on a strained and unnatural reading of the trial testimony." Thus, the State does not rely on the court of appeals' interpretation of A.M.'s testimony in its argument that this court should uphold George's conviction on Count Ten.

We also cannot agree with the court of appeals' interpretation. A.M.'s testimony differentiated between time periods and types of abuse. She was initially asked about touching in the fourth grade, and she described digital penetration. She was

---

[22]     *George*, 2014 WL 2937874, at *4-5.

then asked about other acts, and she described fellatio. After describing George forcing her to perform fellatio, she was asked when "that" had occurred, and she replied that it occurred in third grade. We cannot endorse reading "that" as a reference to both digital penetration and fellatio. It is clear from A.M.'s testimony that she was digitally penetrated in the fourth grade. Immediately following A.M.'s testimony regarding fellatio, the prosecutor asked her when "that" happened, and she indicated that this conduct happened in third grade.

T.E.'s testimony regarding George's abuse of A.M. is similarly insufficient to support George's conviction on Count Ten. T.E. was asked if she knew of anyone else "that this happened to." Presumably "this" referred to the type of abuse T.E. had described — inappropriate touching under T.E.'s clothes that did not involve digital penetration. But even if the testimony is interpreted more broadly as indicating that T.E. believed George had sexually abused A.M. in other ways, such vague language is insufficient when multiple types of sexual abuse have been charged and the specific type of abuse the testimony refers to is unclear.

Viewing all of this evidence together in the light most favorable to the verdict, we conclude that the State's concession of error is well taken, and we hold that it was error for the court of appeals to affirm George's conviction on Count Ten.

**B.    The Evidence Is Insufficient To Support George's Conviction On Count Ten Under The State's Continuing Course Of Conduct Theory.**

Though the State concedes that the court of appeals' analysis is erroneous, it offers an alternative ground upon which the conviction for Court Ten may be affirmed: The State argues that "the jury could . . . conclude that George [digitally penetrated A.M. during her third-grade year] based on A.M.'s description of a continuing course of conduct that started before she was in third grade and continued until after she got out of fourth grade." The State points to various pieces of evidence to argue that the jury

could have reasonably concluded that George digitally penetrated A.M. during her third-grade year. And the State notes that other courts have upheld convictions when the victim testified to a pattern of abuse.

George responds that this is not a continuing course of conduct case. George argues that a sexual abuse course of conduct case requires "evidence showing . . . a particular type of sexual conduct occurred within a time frame." George notes that "there was no testimony or statements that A.M. was digitally penetrated at all during the relevant time frame for Count [Ten]." George also argues that while A.M. testified to inappropriate touching, she "did not testify that any of that consisted of digital penetration." George argues that the State is trying to convict him "based solely on propensity" evidence.

When reviewing a conviction based on an alleged continuing course of conduct theory, we agree with the California Supreme Court that the evidence before the jury

> must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g.[,] lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe *the number of acts* committed with sufficient certainty to support each of the counts alleged in the . . . indictment (e.g., "twice a month" or "every time we went camping"). Finally, the victim must be able to describe *the general time period* in which these acts occurred (e.g., "the summer before [] fourth grade," or "during each Sunday morning after he came to live with us") to assure the acts were committed within the applicable limitation period.[23]

---

[23] *People v. Jones*, 792 P.2d 643, 655-56 (Cal. 1990) (en banc) (emphasis in original). *Jones* indicated that *the victim* must testify to these facts, but we believe this

(continued...)

Here, A.M. sufficiently described digital penetration and differentiated it from the other acts of sexual abuse George committed. But the State failed to provide sufficient evidence regarding the frequency and timing of the digital penetration such that a reasonable jury could conclude beyond a reasonable doubt that George had digitally penetrated A.M. during her third-grade year (the time period relevant to Count Ten) as opposed to her fourth-grade year (the time period relevant to Count Eight).

A.M.'s statement that George "touched [her]" between the ages of four and six is insufficiently specific to conclude or even reasonably infer that George continued digitally penetrating her through her third-grade year. T.E.'s statements regarding George's abuse of A.M. are similarly vague because, even if they indicate that George was abusing A.M. during A.M.'s third-grade year, they do not reference, directly or indirectly, the specific type of abuse involved. And George's statements during his interview do not provide any additional specificity regarding the frequency of his abuse of A.M. by digital penetration.

In A.M.'s forensic interview, she was asked to think of one time when she was abused and to "tell . . . everything you know about that or everything you can remember about that." In response A.M. described penis-to-vagina penetration and fellatio. A.M. then testified that George "would do that every night." A.M. stated that the abuse stopped "[w]hen [she] moved to Anchorage." A.M. was later asked if she could remember if George touched her any other time or at any other place. Only then did A.M. disclose that abuse occurred after the move to Anchorage (after she completed

---

**23**(...continued)
to be too strict a rule. If another witness is able to testify to the necessary facts, we see no reason to deem that testimony insufficient to support a conviction.

third grade) and describe acts that preceded the digital penetration to which she testified before the jury.[24]

In sum, we conclude that there is nothing in the record that would allow a reasonable juror to find that George engaged in a continuing course of conduct that involved digital penetration with the requisite level of frequency to support Count Ten.[25] The State argues that other courts have relied on a theory similar to the continuing course of conduct theory it advances in this case. But the cases it cites are distinguishable because in those cases there was evidence from which the jury could reasonably infer that the specified conduct occurred during the relevant period.[26]

---

[24] During her interview, A.M. could not recall if George had engaged in digital penetration. Before the jury, she clearly testified to digital penetration during her fourth-grade year.

[25] The State notes that Alaska law does not make the date of an offense an element of the crime that need be proven beyond a reasonable doubt. This is generally accurate, though when an offense occurred may be important in a sexual abuse case to establish the victim's and the defendant's ages. *See* AS 11.41.434. But the problem here is that George was charged with engaging in digital penetration during both A.M.'s third-grade year and fourth-grade year. The dates were necessary to distinguish between the different counts with which George was charged. A.M.'s testimony clearly supported the count related to digital penetration in the fourth grade. It is the evidence regarding digital penetration during the third grade that is lacking.

[26] *Jones*, 792 P.2d at 659 (affirming conviction on certain counts where the victim testified to specific acts of abuse and the frequency with which they were committed, which encompassed the relevant time period); *Young v. State*, 106 So. 3d 811, 814, 821-22 (Miss. App. 2012) (affirming a conviction where an expert testified to evidence of three different types of penetration and the victim stated she was abused "a lot at [her] house" during the relevant time period); *State v. Sexton*, 929 S.W.2d 909, 917 (Mo. App. 1996) (affirming a jury's conviction because the victim testified that a specific act of abuse occurred "continually over a number of years" including the years relevant to the charge). The State also cites *Anderson v. State*, 289 P.3d 1
(continued...)

-14-                                                      7072

The State failed to provide this type of evidence with respect to Count Ten. The State introduced ample evidence that George digitally penetrated A.M. during her fourth-grade year, but it provided neither evidence demonstrating a specific instance of digital penetration during A.M.'s third-grade year nor evidence demonstrating that George engaged in a course of sexual abuse encompassing A.M.'s third-grade year that regularly involved digital penetration. Without evidence of the frequency of the specific act charged, the State's continuing course of conduct theory cannot support George's conviction on Count Ten.

## V. CONCLUSION

For the reasons stated above, we REVERSE George's conviction on Count Ten and REMAND this matter to the superior court for its entry of a judgment of acquittal on Count Ten.

---

[26](...continued)
(Alaska App. 2012) *modified on reh'g Anderson v. State*, 337 P.3d 534 (Alaska App. 2014). We recognize that the court of appeals endorsed a continuing course of conduct theory in that case. But its decision is not binding on this court because in *Anderson* there was testimony that Anderson abused one of his victims "often during his visits to her mother's house" and the visits began and continued through the relevant time period. *Id*. at 9. In addition, the counts on which Anderson was convicted involved the same type of abuse, unlike this case, which involves at least three different types of abuse. *Id.*