NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| YOUNG JAE KIM,<br><br>Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>Appellee. | Court of Appeals No. A-11484<br>Trial Court No. 3AN-12-7632 CR<br><br>O P I N I O N<br><br>No. 2542 — February 24, 2017 |

Appeal from the District Court, Third Judicial District, Anchorage, Alex Swiderski, Judge.

Appearances: David D. Reineke, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Melissa Wohlfeil, Assistant District Attorney, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, and Allard, Judge.

Judge ALLARD.

Young Jae Kim was convicted of third-degree theft for stealing a computer from the University of Alaska and then making a false report to the police officer who was investigating the missing computer.[1] Kim told the officer that someone had stolen the computer from him while he was in the university library.

---

[1] Former AS 11.46.140(a)(1) (2012) and AS 11.56.800(a)(2), respectively.

Kim raises three claims on appeal. He argues first that the judge at his trial improperly allowed the investigating officer to offer his opinion concerning the credibility of Kim's version of events and a competing version of events offered by one of the State's witnesses. Kim next claims that the prosecutor engaged in improper behavior when, during her cross-examination of Kim, she asked Kim whether he was telling the truth and the State's witness was lying. Lastly, Kim claims that the prosecutor improperly offered her personal opinion concerning Kim's credibility when she delivered her closing argument to the jury.

None of these claims were preserved in the trial court. For the reasons explained in this opinion, we conclude that Kim has failed to show plain error. We therefore affirm Kim's convictions.

*Underlying facts*

Kim was a student at the University of Alaska Anchorage. In March 2010, he checked out a laptop computer from the university on a long-term student loan. Two years later, Kim reported that this laptop had been stolen from him on June 15, 2012 when he briefly left the laptop unattended in the university library.

Using a monitoring program, the university was able to locate the laptop at the home of George Yates. When Yates was contacted, he told the university police that he had seen the computer advertised on Craigslist, and that he had purchased the laptop for $60 from a man named Samuel Choe. According to Yates, he purchased the computer around the same time that Kim claimed that the laptop was taken from him at the library.

University police officer Roger Frierson then interviewed Samuel Choe. Choe admitted selling the laptop to Yates, but he was reluctant to reveal how he acquired the laptop. The officer informed Choe that the laptop was stolen, and that he (Choe)

could get in trouble for trafficking in stolen goods. Choe declared that he had not known that the laptop was stolen, and he then told the officer that he had received the laptop from his friend Kim as collateral for a loan that Kim had taken out from Choe. According to Choe, Kim failed to repay the loan, so Choe sold the laptop to Yates.

Frierson interviewed Kim and told Kim what he had already learned through his investigation, including what Yates and Choe had said. Kim continued to assert that the laptop had been stolen from him at the library.

The police, and later the district attorney's office, concluded that Kim's story was false, so the State charged Kim with third-degree theft for pledging the laptop to Choe as collateral for the loan,[2] and with making a false report to the police for declaring that the laptop had been stolen.[3]

> *It was improper to allow Officer Frierson to offer his opinion as to whether Choe and Kim were telling the truth, but this improper testimony did not rise to the level of plain error given the circumstances of this case*

At Kim's trial, Officer Frierson testified about his investigation into the report of the stolen laptop. During this testimony, Frierson told the jury that when he interviewed Kim, he concluded that Kim was lying about the laptop being stolen from the library. According to Frierson, the "real theft" occurred when Kim pledged the laptop as collateral for the loan. Frierson also testified that, during his earlier interview with Choe, he concluded that Choe had not known that the laptop was stolen, and that Choe was acting in good faith in trying to help the officer.

---

[2]   *See* former AS 11.46.140(a)(1) (2012).

[3]   *See* AS 11.56.800(a)(2).

Kim's attorney did not object to any of this testimony, or to the prosecutor's questions that elicited this testimony. But on appeal, Kim claims that the officer's testimony was improper.

We agree with Kim that it was improper for Officer Frierson to testify that he thought Choe was telling the truth about the laptop and that Kim was lying.

This Court has repeatedly condemned allowing a witness to act as a "human polygraph" — *i.e.*, allowing a witness to offer a personal opinion about the credibility of another witness's prior statements or testimony.[4] Other courts have done the same.[5]

We have expressed particular concern when the testifying witness is a law enforcement officer, because "jurors may surmise that the police are privy to more facts than have been presented in court, or [jurors] may be improperly swayed by the opinion of a witness who is presented as an experienced criminal investigator."[6]

Those concerns apply in this case. Officer Frierson testified that he had been a police officer for almost nine years. He further testified that he had been the investigating officer in this case, and that the investigation had been "pretty lengthy," taking approximately six weeks. From this, the jurors might surmise that Frierson had some reason for believing Choe over Kim that had not been introduced into evidence.

---

[4] *Sakeagak v. State*, 952 P.2d 278, 282 (Alaska App. 1998); *Flynn v. State*, 847 P.2d 1073, 1075-76 (Alaska App. 1993); *Thompson v. State*, 769 P.2d 997, 1003 (Alaska App. 1989); *George v. State*, 2014 WL 2937874, at *1 (Alaska App. June 25, 2014) (unpublished), *rev'd on other grounds*, 362 P.3d 1026 (Alaska 2015).

[5] *See* 3 *Wharton's Criminal Evidence* § 12:13, p. 358 (15th ed. 1999) ("Most courts prohibit lay witnesses from commenting on someone else's credibility because the factfinder must ultimately make that evaluation and lay witnesses are no better than the factfinder at reaching those conclusions."); 1 *McCormick on Evidence* § 43 n.29, p. 285 (7th ed. 2013) ("The prevailing view is that one witness may not be asked whether another witness lied or was untruthful.").

[6] *Sakeagak*, 952 P.2d at 282.

The jurors might also be swayed by the opinion of a witness who was presented as an experienced criminal investigator. We therefore conclude that Officer Frierson should not have been permitted to testify as to whose story — Kim's or Choe's — he thought was more credible.

But although Frierson's testimony on this point was improper, we conclude that this testimony did not prejudice the fairness of Kim's trial. The information that Frierson based his opinion on — the information gleaned from his investigation — had already been introduced into evidence at Kim's trial, and the jury was therefore already acquainted with the evidentiary basis of Frierson's opinion about the relative credibility of Choe and Kim. In addition, both Choe and Kim testified at Kim's trial, and both were extensively questioned regarding their descriptions of what happened to the laptop. Thus, the jurors could make their own evaluation of Choe's and Kim's credibility.

Given this record, we conclude that Frierson's testimony, although improper, did not constitute plain error requiring reversal of Kim's convictions.[7]

*It was error for the prosecutor to ask Kim if he was contending that Choe's description of events was a lie, but it was not prejudicial*

When Kim took the stand at his trial, he testified, consistent with his earlier statements, that the laptop was stolen from him at the library. When the prosecutor cross-examined Kim, she asked him a series of questions that highlighted the fundamental discrepancy between Kim's assertion that the laptop was stolen and Choe's testimony that Kim had given him the laptop as collateral for a loan.

---

[7]  *See Adams v. State*, 261 P.3d 758, 774 (Alaska 2011).

Toward the end of this series of questions, the prosecutor asked Kim, "Are you saying that Mr. Choe is lying?", and "Are you lying, or is he lying?" Kim replied that he was not lying and that Choe was the one who was lying.

Kim's attorney did not object to these questions. But, on appeal, Kim argues that it was plain error for the trial court to permit the prosecutor to ask these questions, because Kim was then forced to offer an opinion about the credibility of another witness (*i.e.*, Choe).

As discussed in the preceding section of this case, Alaska courts have often condemned allowing witnesses to comment on the veracity of another witness's testimony.[8] But we have never ruled on the specific issue presented here: the propriety of so-called "were they lying?" questions — that is, the propriety of asking one witness whether another witness was lying during their in-court testimony when both witnesses claim personal knowledge of the underlying factual issue.

A majority of jurisdictions to reach this question have adopted a bright-line rule against "were they lying?" questions, particularly when they are directed against defendants or defense witnesses.[9] There are a number of reasons to favor this bright-line approach.

First, such questions offer little, if any, probative value because they seek information beyond the competency of the witness — *i.e.*, they require the witness to

---

[8]   *E.g.*, *Sakeagak v. State*, 952 P.2d 278, 282 (Alaska App. 1998).

[9]   *See, e.g.*, *United States v. Sanchez*, 176 F.3d 1214, 1220 (9th Cir. 1999); *Liggett v. People*, 135 P.3d 725, 729-30 (Colo. 2006); *State v. Singh*, 793 A.2d 226, 236-39 (Conn. 2002); *State v. Maluia*, 108 P.3d 974, 978 (Haw. 2005); *People v. Riley*, 379 N.E.2d 746, 753 (Ill. App. 1978); *State v. Graves*, 668 N.W.2d 860, 873 (Iowa 2003); *Burgess v. State*, 495 S.E.2d 445, 447 (S.C. 1998).

speculate as to another witness's state of mind.[10] As one court has explained, "where the witness expresses a belief as to the veracity of another witness, that statement of belief is simply irrelevant; it does nothing to make the inference that another witness lied any more or less probable."[11]

> Second, as some courts have noted:

> the predominate, if not sole, purpose of such questioning is simply to make the defendant look bad ... . If the defendant says the other witness *is* lying, then the defendant is put in the [unenviable] position of calling someone a liar ... . If the defendant says a contradictory witness is *not* lying, then a fair inference is that the *defendant* is lying."[12]

And even if making the defendant look bad is not the purpose of the question, it "appear[s] to be the general effect."[13]

> Third, the form of the question "ignores numerous alternative explanations for evidentiary discrepancies and conflicts that do not involve lying."[14] For example, "differences in opinion, lapses or inaccuracies in memory, differences in perception, a misunderstanding, or any other number of wholly innocent explanations" may explain the discrepancy between the testimony of the two witnesses.[15] A "were they lying?" type of question falsely reduces these various explanations to the single option of intentional deception.

---

[10] *See Liggett*, 135 P.3d at 731.

[11] *Id.*

[12] *Graves*, 668 N.W.2d at 872 (emphasis in original); *accord Liggett*, 135. P.3d at 732.

[13] *Liggett*, 135 P.3d at 731.

[14] *Id.*

[15] *Id.*; *see also Singh*, 793 A.2d 237; *Graves*, 668 N.W.2d at 872-73.

Fourth, "these questions infringe upon the province of the fact-finder and risk distracting the fact-finder from the task at hand" which is to determine whether the State has proved its case beyond a reasonable doubt.[16] It is the jury, and not the prosecutor or the testifying witness, that is tasked with making credibility determinations. "Were they lying?" questions falsely imply "that the fact-finder must determine one or more of the witnesses is lying."[17] This has the effect of distorting the government's burden of proof, because "the fact-finder may assume that an acquittal turns upon finding that the [government's] witness ... lied."[18]

Finally, "were they lying?" questions have been criticized for being argumentative. As one court has noted, "anytime [an attorney] asks a defendant to comment on the truthfulness or explain the testimony of an adverse witness, the defendant is in effect being pitted against the adverse witness. This kind of argumentative questioning is improper."[19]

Despite the many problems with "were they lying?" questions, a minority of courts have declined to adopt a bright-line rule. These courts express general disapproval of these types of questions, but they approach each occurrence on a case-by-case basis.[20] The minority approach therefore leaves room for trial court discretion when

---

[16] *Liggett* 135 P.3d at 732; *see also Singh*, 793 A.2d at 238.

[17] *Liggett* 135 P.3d at 732.

[18] *Id.*; *accord Singh*, 793 A.2d at 237; *Maluia*, 108 P.3d at 978.

[19] *Burgess*, 495 S.E.2d at 447.

[20] *See Liggett*, 135 P.3d at 730 (providing a partial list of jurisdictions in the minority); *see also State v. Morales*, 10 P.3d 630, 633 (Ariz. App. 2000) (holding that "were they lying" questions are not improper if "the only possible explanation for the inconsistent testimony is deceit or lying or when the defendant has opened the door by testifying about the veracity

(continued...)

the competing testimony is truly irreconcilable and the only reasonable inference is that one witness is lying.[21] As these courts have noted, in such circumstances, a "were they lying" question does not falsely reduce the various explanations for the discrepancy in witness testimony to intentional deception — because intentional deception is the only reasonable explanation.[22] Instead, the question only forces the defendant to acknowledge what the jury must have already realized — that the defendant is implicitly accusing another witness of lying.

Although we agree that "were they lying?" questions should be disfavored and rarely (if ever) permitted, we conclude that this case does not require us to decide whether to adopt the majority bright-line approach or the minority approach. Instead, because there was no objection to the "were they lying?" question in this case, we need only determine whether the particular question asked in this case rose to the level of plain error.

Here, the jury heard both Kim's and Choe's testimony, and it would have been obvious to the jury that there was no other reasonable way to reconcile the stories of Kim and Choe — either Kim was lying or Choe was lying. The prosecutor's question therefore simply made apparent what the jury would have already realized — that this case turned on their determination of Kim's and Choe's credibility. Given these

---

[20] (...continued)
of other witnesses on direct examination"); *People v. Overlee*, 666 N.Y.S.2d 572, 576 (N.Y. App. Div. 1997) (holding that such questions are appropriate "where ... the defendant's testimony leaves open only the suggestion that the [prosecution's] witnesses have lied").

[21] *See Morales*, 10 P.3d at 633; *Overlee*, 666 N.Y.S.2d at 576.

[22] *See Morales*, 10 P.3d at 633; *Overlee*, 666 N.Y.S.2d at 576.

circumstances, we conclude that the prosecutor's question did not prejudice Kim's substantial rights, and Kim has not shown plain error.[23]

*The prosecutor did not offer her personal opinion as to Kim's credibility when she delivered the State's summation to the jury*

One theme of the prosecutor's closing argument was that Kim had spun a "web of lies." The prosecutor recounted Officer Frierson's interview with Kim, and she argued that Kim committed the crime of making a false report when he declared the laptop had been stolen from him at the library. The prosecutor then asserted that Kim was continuing to lie about what happened to the laptop — and that the jurors were now "witnesses to [Kim's] lies" (*i.e.*, they had heard his trial testimony).

Kim's attorney did not object to the prosecutor's comments. But on appeal, Kim argues that these comments were "improper assertions of the prosecutor's personal opinion as to Kim's credibility."

A prosecutor is permitted to argue reasonable inferences from the evidence.[24] And as we explained in the preceding section of this opinion, there was an irreconcilable conflict between Choe's and Kim's accounts of what happened to the laptop. It was therefore reasonable to infer, from the evidence, that Kim was lying about what happened. Indeed, if the State was to prove the charge of making a false report, the State had to prove that Kim knowingly gave a false account of events to the authorities.

Here, the prosecutor's assertion about Kim's "web of lies" was tied directly to her discussion of the evidence presented at Kim's trial, and her assertion was a

---

[23] *See Adams v. State*, 261 P.3d 758, 774 (Alaska 2011).

[24] *Lewis v. State*, 862 P.2d 181, 189 (Alaska App. 1993).

reasonable comment on that evidence. We therefore conclude that the prosecutor engaged in proper argument when she characterized Kim's testimony in this fashion.

*Conclusion*

The judgment of the district court is AFFIRMED.