NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| RAYMOND SCOTT BROWN, | Court of Appeals No. A-12289 |
| Appellant, | Trial Court No. 3KN-12-2038 CR |
| v. | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2557 — June 2, 2017 |

Appeal from the Superior Court, Third Judicial District, Kenai, Carl Bauman, Judge.

Appearances: Randall S. Cavanaugh, Kalamarides & Lambert, Anchorage, for the Appellant. Terisia K. Chleborad, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge. [*]

Judge SUDDOCK.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

A jury convicted Raymond Scott Brown of four counts of second-degree theft based on four separate incidents of shoplifting from the Kenai Home Depot.[1]  On appeal, Brown argues that the trial judge erred in denying his motion to dismiss the indictment against him based on alleged grand juror bias.  Brown also argues that the prosecutor's cross-examination of him was improper and that the prosecutor engaged in improper argument during the State's summation.  For the reasons explained here, we reject Brown's grand jury argument and his improper summation argument.  We agree with Brown that the prosecutor's cross-examination was improper, but we conclude that the error was harmless.

*Background facts*

Sometime during the month of July 2012, a Kenai Home Depot employee observed a man with a dilapidated red pickup truck hitch a log splitter to the pickup and drive away without paying for it.  Later that same month, a different store employee photographed a red pickup truck bearing license plate number FAE585 that was loaded with a generator that had not been purchased.  The employee who had witnessed the first theft identified the red pickup in the photograph as the one that he had observed earlier.  According to DMV records, the pickup was registered to Brown.

On September 5, 2012, while Kenai resident Kelly Crane was stopped in his vehicle near the Home Depot, he observed a man wearing work clothes and a distinctive wide-brimmed hat standing on the Home Depot side of a locked chain link gate at the rear of the store.  Crane saw the man push a contractor garbage bag through a gap in the gate.  The man then departed, and Crane approached and examined the bag; he found that it contained brand new hand tools and other items.  As Crane was

---

[1]    Former AS 11.46.130(a)(1) (2012).

examining the bag, a man who Crane believed to be the person he saw at the gate, drove by in a red pickup truck without a tailgate and peered at Crane before driving away.

According to Crane's testimony, when he then parked in the store's contractor parking lot he observed the same red pickup, and he jotted down its license plate number — FAE585, Brown's license plate number. As Crane returned the stolen goods to the store management, he spotted a man he believed to be the same person he had observed earlier. The man wore the same wide-brimmed hat, had the same facial hair, and wore work clothes. The man exited the store and drove away in the red pickup without the tailgate.

Brown was indicted for the two thefts in July, and for subsequent thefts in September and October of 2012, from the same Home Depot store.

At trial, Brown testified and denied the charges. As to the theft observed by Crane, Brown testified that he observed a young man with blond hair pushing a contractor garbage bag through the Home Depot gate, and that this young man departed in a blue car. Brown was convicted of all four of these charges by the jury. This appeal followed.

*Brown's attack on the grand jury indictment*

At the start of the grand jury proceeding, the prosecutor asked the grand jurors if any of them knew anyone involved in Brown's case. One of the grand jurors stated that she worked at the Kenai Home Depot, and that she knew "all these people." Another grand juror then called out, "Guilty," followed by some laughter. The first grand juror then explained: "I already know all about this incident. I know what's happened." The prosecutor excused the first grand juror from the proceeding.

After hearing the evidence in the case, the sixteen remaining members of the grand jury indicted Brown on the four theft charges.

Prior to trial, Brown moved to dismiss the indictment. In his motion, Brown argued that the second grand juror's "guilty" comment tainted the entire grand jury panel, and that the prosecutor exacerbated the second grand juror's misconduct by failing to admonish the grand juror or provide a curative instruction.

The superior court denied Brown's motion. In his written order, the judge found that Brown had, "[a]t most ... demonstrated possible bias or, more likely, a misguided attempt at humor by one member of the grand jury." Even assuming that the second grand juror was biased, the judge concluded that Brown had offered no reason "[to] impute that [grand juror's] possible bias to the rest of the grand jurors."

Brown now challenges this ruling on appeal, arguing that the second grand juror's comment demonstrated that the grand juror had made up his mind about Brown's guilt prior to hearing the evidence. Brown further argues that this problem was "compounded by the inaction of the prosecutor." Based on these assertions, Brown contends that the superior court should have dismissed the indictment.

To prevail on this claim, Brown must demonstrate both that the second grand juror was biased, and that this bias affected the other grand jurors.[2] But as we have explained, "[i]n the absence of particularized circumstances establishing the likelihood of a significant influence on the grand jury as a whole, [there is] no legitimate basis for imputing the bias of one grand juror to others."[3]

Here, we agree with Brown that the second grand juror's comment was improper — and that a prosecutorial response would have been appropriate. But Brown has not pointed to any reason for concluding that this grand juror's comment affected the

---

[2]   *Hohman v. State*, 669 P.2d 1316, 1319 (Alaska App. 1983).

[3]   *Patterson v. State*, 747 P.2d 535, 537 (Alaska App. 1987).

rest of the panel. And upon review of the grand jury transcript, we perceive no basis for imputing the single grand juror's comment to the rest of the jury panel.

We accordingly uphold the trial court's denial of Brown's motion to dismiss the indictment.

*The prosecutor's cross-examination of Brown was improper but harmless*

During the prosecutor's cross-examination of Brown, the prosecutor noted that Crane (who had testified earlier for the State) had identified Brown as the man who pushed the bag containing stolen tools through a gap in the chain link gate. Then, without objection, the prosecutor asked Brown whether he was accusing Crane of lying.

Brown initially replied that he was not sure what the prosecutor meant by "lying." Brown suggested that Crane might have seen someone else, and that he mistakenly identified this other person as Brown. Then Brown added, "If you are saying [that Crane is] lying because he [said he] saw me, yes, he's lying." The prosecutor responded, "Both of you can't be right. One of you has to be lying."

On appeal, Brown argues that these questions constituted plain error. We agree with Brown that the questions were improper, but we reject his claim of plain error because we conclude that, given the evidence in Brown's case, the questions were harmless.

We recently held in *Kim v. State* that this type of questioning by a prosecutor should rarely, if ever, be allowed.[4] The facts of the instant case illustrate why the implicit assumption underlying such questions — that as a matter of logical necessity one witness must be lying — will often be unfounded.

---

[4] *Kim v. State*, ___ P.3d ___, Op. No. 2542, 2017 WL 727128 (Alaska App. Feb. 24, 2017).

During Crane's testimony, he acknowledged that he "didn't get a real good look at [the man's] face at the [gate], because he kind of had [his wide-brimmed hat] down." Moreover, Crane testified that he was 120 to 150 feet away when he observed the incident at the gate. When the red pickup truck drove by Crane minutes later, Crane described his view of the driver as "a quick glimpse." And when Crane thought he spotted Brown inside the Home Depot, he was only confident of his in-store identification because Brown left in the red pickup truck.

In light of this testimony, there is at least some possibility that Crane's identification of Brown was mistaken. Crane's in-store identification of Brown could have derived mainly from his view of the man who had suspiciously driven by Crane in a red truck, and not from Crane's more distant view of the man at the gate. Crane's testimony was thus consistent with the possibility suggested by Brown — that Crane had made a mistaken identification. Under these circumstances, the assumption underlying the prosecutor's questioning of Brown — that one or the other witness must inevitably be lying — was fallacious.

Brown's attorney did not object to the prosecutor's questions, and so Brown must show plain error.[5] An error is plain when it "was so obvious that it should have been noticed by the trial court *sua sponte*."[6] Because the propriety of the prosecutor's cross-examination in this case was a matter of first impression in Alaska at the time of Brown's trial, the error might not have been obvious to the trial judge.

Under a plain error analysis, a non-constitutional error is prejudicial if the defendant proves that there is a reasonable probability that it affected the outcome of the

---

[5]   *See Adams v. State*, 261 P.3d 758, 764 (Alaska 2011).

[6]   *Burton v. State*, 180 P.3d 964, 968 (Alaska App. 2008) (quoting *Carman v. State*, 658 P.3d 131, 137 (Alaska App. 1983)).

proceeding."[7]  Given the strength of the State's case, the prosecutor's improper line of questioning did not affect the outcome of the proceeding.  The evidence at trial linking thefts from Home Depot of a log splitter and a generator to a particular red pickup was strong, and a photograph of the truck's license plate linked that truck to Brown.  Crane testified that he saw a man with a distinctive wide-brimmed hat commit a theft from Home Depot, and that moments later he saw that man, wearing the distinctive hat, drive slowly by the scene of the crime in a red pickup.  Brown testified that he was coincidentally present near the scene of the crime as it occurred — but only as an observer.  And to explain the possibility that Crane might have seen him drive by, Brown testified that he habitually drove around the Home Depot and looked through the fence to spot goods that the store intended to discard.

This evidence established a compelling circumstantial case against Brown.  Given the strength of the State's case, the prosecutor's brief suggestion during cross-examination that Brown might be lying had no appreciable effect on the verdict, and so was not plain error.

*Brown's attack on the prosecutor's summation*

Brown also argues that the prosecutor committed misconduct when he argued during his summation that Brown's testimony on the stand was knowingly false.  Because Brown did not object to this argument, he must demonstrate plain error.

Here is the challenged portion of the prosecutor's summation:

I submit to you that Mr. Brown lied when he testified about the events on September 5, lied about the events of ... seeing someone [else] stuff the bag through the garden gate center. [It] didn't happen the way that he said ... [He] lied about that.

---

[7]  *Adams v. State*, 261 P.3d 758, 773 (Alaska 2011).

According to Brown, these comments were improper because the prosecutor was essentially vouching for the credibility of the State's witnesses.

We have previously held in *Smith v. State* that it is usually improper for the prosecutor to call the defendant a liar during the prosecutor's final argument.[8] But we declined to find plain error in *Smith*, because there the defendant testified that the police were maliciously framing him; as between the police and Smith, only one account could possibly be true.[9]

As we noted above, this case is not one where Brown's claim of innocence was *necessarily* inconsistent with the inculpatory testimony of the eyewitness, for that witness could have been honestly mistaken. Thus, it was improper cross-examination for the prosecution to suggest the contrary. But during final argument, the prosecutor did not repeat his earlier innuendo that contradictory testimony necessarily equates with a lie by someone. Instead, the prosecutor argued a different proposition: that in order for the jury to convict Brown, it *necessarily* had to find that he perjured himself on the stand. The prosecutor "submitted" for the jury's consideration the proposition that Brown had testified untruthfully — that he "lied."

Under the circumstances of this case, it was not improper for the prosecutor to argue that the evidence should lead the jury to the conclusion that Brown had testified untruthfully. The prosecutor's argument appropriately focused on Brown's testimony that a blond young man with a blue car committed the theft. Although the prosecutor characterized Brown's account as knowingly fictitious, he did not assert that Brown was a congenital liar, nor did he engage in inflammatory assertions against Brown unrelated to the jury's task of determining the facts.

---

[8] *Smith v. State*, 771 P.2d 1374, 1379 (Alaska App. 1989).

[9] *Id.*

Moreover, immediately after the prosecutor asserted that Brown had lied in his testimony about this event, the prosecutor reminded the jurors that it was their "job as fact-finders ... to weigh the credibility of the witnesses, come to a determination as to what happened, and then apply that to the ... law in the case."

The prosecutor's argument was not an improper bolstering of the testimony of other witnesses as Brown claims, and was not error.

*Conclusion*

We AFFIRM the judgment of the superior court.