**Petitioner: Gary L. LIGGETT,**

v.

**Respondent: The PEOPLE of the State of Colorado.**

**No. 05SC142.**

Supreme Court of Colorado, En Banc.

May 15, 2006.

David S. Kaplan, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, for Petitioner.

John W. Suthers, Attorney General, Matthew D. Grove, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, for Respondent.

MARTINEZ, Justice.

Petitioner, Gary Liggett, challenges his conviction on the grounds that the admission of improper statements during his trial infringed upon his right to a fair trial and constituted reversible error. Liggett argues that a witness may not be asked to opine on the veracity of another witness and also challenges the propriety of the prosecutor's closing remarks. In addressing these issues, the court of appeals adopted the rule that it is generally improper to ask a witness to comment on the veracity of another witness, but did not adopt a categorical prohibition, finding some exceptions to the rule. *People v. Liggett*, 114 P.3d 85, 87–88 (Colo.App.2005). Despite finding exceptions to the rule, the court declined to apply any of the exceptions to Liggett's case, finding the challenged remarks improper. *Id.* at 88. The court of appeals then upheld Liggett's conviction, finding that such errors were harmless where the trial court was not unduly swayed by the evidence. *Id.*

Although we agree with the court of appeals that the "were they lying" types of questions posed to Liggett were improper and that the errors were ultimately harmless, we decline to adopt the rule articulated by the court of appeals. Instead, we adopt the approach followed in a majority of jurisdictions that broadly prohibits asking a witness to comment on the veracity of another witness.

## I. Facts and Proceedings Below

On August 14, 1998, Gary Liggett cashed a check in the amount of $2,137.50. The check came from the office of Affiliated Business Brokers where Liggett's boss, Robert Holman, worked as an independent contractor. Liggett did not work for Affiliated Business Brokers but instead worked for a software company run independently by Holman. Although Liggett had access to both offices, he worked exclusively for Holman and solely for sales commissions. At no point in time was Liggett employed by Affiliated Business Brokers.

The People asserted the check was stolen by Liggett who then forged the signature of the account holder, Kay Mitchell. In response, Liggett claimed the check was received as money owed to him for either his services or as reimbursement for an advance Liggett had made to another employee. Liggett admitted cashing the check, but denied stealing it. Liggett also denied forging the account holder's signature and offered the alternative explanation that Holman may have forged the name. Although they were never cashed, the People also accused Liggett of taking additional checks.

Liggett was charged with one count of theft, a class four felony under section 18–4–401(2)(c), C.R.S. (1998), and one count of forgery, a class five felony under section 18–5–102(1)(c), C.R.S. (1998). The People later amended the indictment to include four habitual criminal counts for Liggett's alleged prior convictions. Liggett's case was tried in a bench trial on January 18–19, 2000.

During trial, the prosecutor asked Liggett to comment on the veracity of Holman. The prosecutor twice asked Liggett whether Holman was mistaken in his belief that there was no written employment contract between Liggett and Holman for Liggett's employment at the software company:

Q: Okay. So when Bob Holman sits up here and says that he doesn't remember a written employment contract, *he must be mistaken?*

A: He is mistaken.

Q: Okay.

A: There was one that was signed.

Q: So that's a yes, *he must be mistaken?*

A: Yes.

(Emphasis added). Defense counsel did not object to the prosecutor's questions at this time.

Later in the examination, the prosecutor asked Liggett if Holman lied about the stolen checks:

Q: ... Let me see if I get this straight. You're telling us, the judge, me, everyone, that Bob Holman gave you these checks.

A: Yes.

Q: And Bob Holman—you were here— sat up there and said I didn't give him these checks, right?

A: That's correct.

Q: *So what you're saying is Bob Holman was lying?*

A: That would be an inference, yes.

Q: And, you're saying that we should believe you. You're saying that Bob gave them to you.

A: That is correct.

Defense Counsel: I'm going to object, your Honor. It's argumentative.

Court: Overrule that. Go ahead.

(Emphasis added).

Finally in examination, the prosecutor again asked Liggett if Holman was lying, this time in reference to Holman's testimony regarding the credentials Liggett had presented to Holman:

Q: Okay. So what you're saying is—correct me if I'm wrong—yes, you told him that you were involved in this other suc-

cessful business and that this was just something on the side you were going to do.

A: I told him I was looking for new directions, yes.

Q: All right. Did you tell him that you were independently wealthy?

A: No. I never told him I was independently wealthy.

Q: Did you tell him that you were making 100—to $150,000 a year?

A: No, I did not.

Q: So when he sat up here and said that, *he was lying?*

A: No, I'm not saying that. What I'm saying is that I think that he assumed that that might have been my salary. I never specifically told him how much I was making. I think he might have assumed how much I was making at that point in time.

(Emphasis added). Defense counsel did not object at this time.

Last, during closing argument, the prosecutor contrasted Liggett's testimony with Holman's: "they're accusing Bob Holman of forging [the check], bringing it in as a forged document of some sort and trying to get Gary Liggett in trouble. Did he seem like that kind of guy to you? He didn't to me." Throughout her closing remarks, the prosecutor also repeatedly characterized Liggett as a "con man." No objection was raised to any of these closing remarks.

Liggett was found guilty on both the theft and forgery counts. After trial, but prior to sentencing, the habitual criminal charges were dropped from the case and tried separately. Liggett was convicted in two cases for the habitual criminal charges. All three cases were consolidated in a joint hearing for sentencing on November 14, 2002.

Liggett was sentenced to the Department of Corrections for the following: six years for theft, three years for forgery, three years of mandatory parole (non-habitual), twenty-four years each for the three theft counts (habitual), twelve years for computer crime, twelve years for attempted theft (habitual), and forty-eight years for theft over $15,000 (habitual). The sentences run concurrently. Lig-

gett was also ordered to pay restitution in the amount of $3,520.09.

The court of appeals affirmed Liggett's conviction. *Liggett*, 114 P.3d at 90. We granted certiorari to review the sole issue of whether questions posed to witnesses regarding the veracity of other witnesses are admissible over objection.[1]

## II. Analysis

Liggett challenges his conviction on the grounds that the trial court committed reversible error when it overruled his objection to the prosecutor's line of questions concerning the veracity of other witnesses. We consider whether these questions were improper and, if so, whether Liggett's conviction should be reversed on these grounds.

### A.

■ This court has not previously addressed the question of whether a witness may be asked to comment on the veracity of another witness. A review of our case law reveals that this issue has only been addressed briefly in one court of appeals decision. *See People v. Melanson*, 937 P.2d 826 (Colo.App.1997). In *Melanson*, the court noted "[t]he prosecution may not express a belief in a witness' testimony or elicit testimony as to the truth or falsehood of a witness' testimony." *Id.* at 839 (internal citation omitted). The latter part of this statement was not discussed further and has never been directly addressed in Colorado's case law.

Although this court has not previously considered whether it is improper to ask a witness to comment on the veracity of another witness, the issue has been addressed in many other jurisdictions. The majority of these jurisdictions has expressed the general rule that asking a defendant or witness to comment on the veracity of another witness is improper. These courts offer numerous justifications for finding such questions improper, including that they invade the province of the jury, lack probative value, distort the government's burden of proof, create a "no win" situation for the witness, and are argumentative. *See State v. Santiago*, 269 Conn. 726, 850 A.2d 199, 209–11 (2004) (finding such questions invade the province of the jury, have no probative value, distort the government's burden of proof, and are improper and argumentative); *State v. Singh*, 259 Conn. 693, 793 A.2d 226 (2002) (same); *Knowles v. State*, 632 So.2d 62 (Fla.1993) (finding such questions improper); *State v. Maluia*, 107 Hawai'i 20, 108 P.3d 974, 978 (2005) (finding "were they lying" questions are improper because they invade province of jury, are argumentative, have no probative value, create a risk that the jury may conclude acquittal depends on finding a contradictory witness has lied, are inherently unfair, and create a "no-win" situation for the defendant); *People v. Riley*, 63 Ill.App.3d 176, 19 Ill.Dec. 874, 379 N.E.2d 746, 753 (1978) ("It is improper to ask a defendant's opinion concerning the veracity of other witnesses."); *State v. Graves*, 668 N.W.2d 860, 873 (Iowa 2003) (" '[W]ere they lying' questions are improper under any circumstance."); *State v. Manning*, 270 Kan. 674, 19 P.3d 84 (2001) (questions compelling a defendant or witness to comment on the credibility of another witness are improper); *Commonwealth v. Martinez*, 431 Mass. 168, 726 N.E.2d 913, 924 (2000) ("It is improper to ask the defendant to testify to the credibility of other witnesses." (citation omitted)); *State v. Flanagan*, 111 N.M. 93, 801 P.2d 675, 679 (App.1990) (broadly prohibiting asking the defendant if another witness is "mistaken" or "lying"); *People v. Adams*, 148 A.D.2d 964, 539 N.Y.S.2d 200 (1989) (asking defendant to characterize police officer's testimony as a "lie" is a tactic to be condemned); *People v. Montgomery*, 103 A.D.2d 622, 481 N.Y.S.2d 532, 532 (1984) ("[W]e write again to condemn, as forcefully as possible, prosecutorial cross-examination which compels a defendant to state that the police or other witnesses lied in their testimony."); *Burgess v. State*, 329 S.C. 88, 495 S.E.2d 445, 447 (1998) ("No matter how a question is worded, anytime a solicitor asks a defendant to com-

---

1. Specifically, we granted certiorari to determine "whether the district court reversibly erred by allowing the prosecutor, over defense objection, to repeatedly force petitioner to comment on the veracity/credibility of other witnesses."

ment on the truthfulness or explain the testimony of an adverse witness," the questioning is argumentative and improper); *Mason v. State*, 449 S.W.2d 47, 49 (Tex.Crim.App.1970) (such questions are improper and argumentative); *State v. Emmett*, 839 P.2d 781, 787 (Utah 1992) (it is argumentative and prejudicial to ask a criminal defendant to comment on the veracity of another witness); *State v. Casteneda–Perez*, 61 Wash.App. 354, 810 P.2d 74, 79 (1991) (calling for defendant's opinion concerning veracity of other witnesses invades province of jury and is misleading and unfair); *Jensen v. State*, 116 P.3d 1088, 1097 (Wyo.2005) (finding error and misconduct where defendant is cross-examined "using the 'lying' or 'not telling the truth' or 'mistaken' technique"). *See also United States v. Henke*, 222 F.3d 633 (9th Cir.2000); *United States v. Fernandez*, 145 F.3d 59, 64 (1st Cir.1998); *United States v. Lin*, 101 F.3d 760 (D.C.Cir.1996); *United States v. Scanio*, 900 F.2d 485, 493 (2d Cir. 1990); *Boatwright v. State*, 452 So.2d 666 (Fla.App. 4th Dist.1984). *But see Whatley v. State*, 270 Ga. 296, 509 S.E.2d 45 (1998) (finding such questions merely emphasize the conflict in the evidence and do not improperly invade the role of the jury); *Fisher v. State*, 128 Md.App. 79, 736 A.2d 1125 (1999) (asking a witness if another witness is lying is permissible).

A few jurisdictions have distinguished asking whether a witness was "wrong" or "mistaken," finding those terms were not improper in the particular context of those cases. *See United States v. Gaines*, 170 F.3d 72, 82 (1st Cir.1999) (asking whether the other witnesses or voices on tape recordings were "wrong," rather than "lying" did not amount to plain error in context of case); *United States v. Gaind*, 31 F.3d 73, 77 (2d Cir.1994) ("Asking a witness whether a previous witness who gave conflicting testimony is 'mistaken' highlights the objective conflict without requiring the witness to condemn the prior witness as a purveyor of deliberate falsehood, i.e., a 'liar.'"). *But see Singh*, 793 A.2d at 239 n. 16; *Maluia*, 108 P.3d at 980; *Flanagan*, 801 P.2d at 679.

A minority of courts have also taken the approach that such questions are generally improper, but have declined to adopt a bright-line rule. *See S. Union Co. v. Sw. Gas Corp.*, 281 F.Supp.2d 1117, 1127 (D.Ariz. 2003) ("As many courts have recognized, the propriety of such a question may depend on the context in which the question is asked."); *State v. Morales*, 198 Ariz. 372, 10 P.3d 630 (App.2000) (adopting general prohibition, but finding that "were they lying" questions may not always be improper); *State v. Hart*, 303 Mont. 71, 15 P.3d 917 (2000) (finding such questions are improper where they have no probative value, but leaving admissibility determination to the sound discretion of the trial court); *People v. Overlee*, 236 A.D.2d 133, 666 N.Y.S.2d 572 (1997) (same); *State v. Pilot*, 595 N.W.2d 511, 518 (Minn.1999) (agreeing with general prohibition, but finding that "[s]ituations may arise where 'were they lying' questions may have a probative value in clarifying a particular line of testimony, in evaluating the credibility of a witness claiming that everyone but the witness lied or, as in *Overlee*, the witness 'flatly denies the occurrence of events'"); *Daniel v. State*, 119 Nev. 498, 78 P.3d 890, 904 (2003) (prohibiting such questions "except where the defendant during direct examination has directly challenged the truthfulness of those witnesses"); *State v. Johnson*, 273 Wis.2d 626, 681 N.W.2d 901, 908–09 (2004) (depending on context, such questions may aid jury with credibility determinations).

In addressing this issue, the court of appeals elected to follow *Morales* and adopt this latter approach, barring questions concerning another witness's veracity generally, but finding them permissible "when the only possible explanation for the inconsistent testimony is deceit or lying or when the defendant has opened the door by testifying about the veracity of other witnesses on direct examination." *Liggett*, 114 P.3d at 88.

We decline to follow the rule adopted by the court of appeals and instead adopt the rule followed by the majority of jurisdictions to have squarely addressed the issue.

■ While we have not addressed the specific issue of whether a prosecutor may ask a witness or defendant to opine on the veracity of others, our case law and evidentiary rules do provide guidance insofar as they weigh

heavily against similar types of admissions. For example, in *Domingo–Gomez v. People*, 125 P.3d 1043, 1050–51 (Colo.2005), we found a prosecutor's averments that the defendant and the defense witnesses "lied" during closing argument were improper statements of personal opinion. While we afford prosecutors wide latitude in presenting the People's case, the prosecutor may not communicate a personal opinion as to the veracity of witnesses. *Id.* at 1049–50. Similarly, in *Tevlin v. People*, 715 P.2d 338, 341 (Colo.1986), this court found the trial court erred in allowing a social worker to testify that a victim was telling the truth when relating specific incidents of abuse. The testimony did not follow a character attack by the defense and pertained to a specific occasion of truthfulness rather than the victim's general character for truthfulness. *Id.* at 341. Accordingly, the testimony was found improper as a witness may not opine on the veracity of another on a specific occasion. *See also People v. Koon*, 724 P.2d 1367, 1370–71 (Colo.App.1986) ("[N]either a lay nor expert witness may give opinion testimony that a witness was telling the truth on a specific occasion.").

In general, we favor the admission of relevant evidence but exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ...." CRE 403. Consistent with this principle, evidence of a person's character or character trait is barred under Colorado Rule of Evidence 404(a) for the purpose of proving that on a particular occasion the person acted in conformity with his character or character trait. CRE 404(a). Exceptions to CRE 404(a) apply for limited purposes and in limited circumstances. *See People v. Gaffney*, 769 P.2d 1081, 1085–87 (Colo.1989). As relevant here, the exception provided by Rule 608 permits the admission of opinion or reputation evidence to bolster or impeach the credibility of a witness. CRE 608. *See Gaffney*, 769 P.2d at 1085–86.

Although CRE 608 character evidence is admissible under certain circumstances to support or attack the credibility of a witness, CRE 608 evidence is not permitted to establish whether a witness testified truthfully on the witness stand or whether he or she was truthful on a particular occasion. *See People v. Hall*, 107 P.3d 1073, 1076–78 (Colo.App.2004). The admission of testimony that another witness or the defendant is or was being truthful or untruthful on a particular occasion is properly excluded, whereas more general evidence of a witness's character for truthfulness or untruthfulness may be admitted under limited exceptions where the probative value of the testimony merits an exception to the rule.

We weigh these considerations in addressing the issue of whether it is improper to ask a witness to comment on the veracity of another witness. First, we note that asking a witness to comment on the veracity of another witness offers little or no probative value. *See Singh*, 793 A.2d at 236–37; *Maluia*, 108 P.3d at 978. This kind of questioning seeks information beyond the witness's competence. *See Emmett*, 839 P.2d at 787. And, where the witness expresses a belief as to the veracity of another witness, that statement of belief is simply irrelevant; it does nothing to make the inference that another witness lied any more or less probable. *See Graves*, 668 N.W.2d at 873. In *Graves*, the court went further, noting that the witness's response may not matter as "the predominate, if not sole, purpose of such questioning is simply to make the defendant look bad ...." *Graves*, 668 N.W.2d at 872. While this may or may not be the intent of the cross-examiner, this does appear to be the general effect, that is, these questions portray the witness in a bad light without yielding anything probative.

Second, this form of questioning ignores numerous alternative explanations for evidentiary discrepancies and conflicts that do not involve lying. There may be differences in opinion, lapses or inaccuracies in memory, differences in perception, a misunderstanding, or any other number of wholly innocent explanations for discrepancies between one witness's testimony and another's. *See Singh*, 793 A.2d at 237–38; *Graves*, 668 N.W.2d at 872–73. By asking a "were they lying" type of question, the possibilities are often falsely reduced to deliberate deception on the part of one or more witnesses. The

Supreme Court of Iowa described a particularly troubling aspect of the problem:

> The accused's answer is unimportant because the accused is in a no-win situation. If the defendant says the other witness *is* lying, then the defendant is put in the position of calling someone a liar, a particularly unenviable state when the other witness is a law enforcement officer. If the defendant says a contradictory witness is *not* lying, then a fair inference is that the *defendant* is lying.

*Graves*, 668 N.W.2d at 872 (internal citation omitted) (emphasis in original). In other settings, this predicament may not be as dire, but it nonetheless places the witness in an unfair position and may prejudice the witness. And, as *Graves* noted: "It is unjust to make the defendant give an opinion as to who is lying when, in fact, it is possible that neither witness has deliberately misrepresented the truth." *Id.*

■ Third, these questions infringe upon the province of the fact-finder and risk distracting the fact-finder from the task at hand. Credibility determinations are to be made by the fact-finder, not by the prosecutor or a testifying witness. *People v. Lopez*, 129 P.3d 1061, 1066 (Colo.App.2005). A "were they lying" type of question infringes upon this role by asking the witness to make a credibility assessment and by the credibility assumptions built into the question itself. *See Casteneda–Perez*, 810 P.2d at 79. Moreover, while it is appropriate to juxtapose conflicting accounts of the facts and ask the fact-finder to resolve the dispute, it is not appropriate to compound that task by implying that the fact-finder must determine one or more of the witnesses is lying. This effectively distorts the government's burden of proof. *See Singh*, 793 A.2d at 237–38. In the criminal setting, this is particularly problematic as the fact-finder may assume that an acquittal turns upon finding that the other witness or witnesses lied. *See id.* at 237; *Maluia*, 108 P.3d at 978.

Finally, asking "were they lying" questions is argumentative. These questions set one witness against another and call for the inference that someone is deliberately deceiving the court. As explained in *Burgess*, "[n]o matter how a question is worded, anytime a solicitor asks a defendant to comment on the truthfulness or explain the testimony of an adverse witness, the defendant is in effect being pitted against the adverse witness. This kind of argumentative questioning is improper." 495 S.E.2d at 447 (internal citations omitted). In responding to this line of questioning, the witness risks alienating the jury by appearing antagonistic or accusatory.

The grounds on which a minority of jurisdictions have found exceptions to the general rule prohibiting "were they lying" types of questions are not persuasive. Courts adopting a case-by-case approach or leaving the admissibility determination to the sound discretion of the trial court have done so on the grounds that in some circumstances the probative value of the evidence may outweigh the concerns we have outlined above. *See, e.g., Morales*, 10 P.3d at 633; *Hart*, 15 P.3d at 923–24; *Johnson*, 681 N.W.2d at 908–09.

We find this case-by-case approach unnecessary. There are other ways to emphasize conflicts in the evidence and raise questions as to a witness's credibility that do not involve asking "were they lying" types of questions. For example, a cross-examiner may ask non-prejudicial questions that highlight the discrepancies and later emphasize any conflicting accounts by juxtaposing them in closing argument. In contrast, asking a witness to opine on the veracity of another witness is prejudicial, argumentative, and ultimately invades the province of the fact-finder. These concerns far outweigh any supposed probative value elicited by such questions. Accordingly, we decline to adopt a case-by-case approach and side with the majority of jurisdictions in finding such questions categorically improper.[2]

2. We note that the court of appeals found an exception "when the defendant has opened the door by testifying about the veracity of other witnesses on direct examination." *Liggett,* 114 P.3d at 88. The court of appeals' exception resembles CRE 608(b), which permits the admission of otherwise inadmissible evidence where a defendant opens the door by opining on the veracity of another witness on direct examination. This evidentiary rule does not apply to Liggett and we do not address it here.

We now turn to the proceedings below to determine whether the evidentiary errors warrant reversal.

### B.

■ Consistent with our holding that "were they lying" questions are categorically improper, we find the prosecutor's line of questions asking Liggett to opine on the veracity of another witness was improper. Although the trial court abused its discretion in allowing these questions over objection, "reversal is not required if the error was harmless under the circumstances." *People v. Summitt*, 132 P.3d 320, 327 (Colo.2006) (citing *People v. Bastardo*, 191 Colo. 521, 526, 554 P.2d 297, 301–02 (1976)). An error is deemed harmless where "viewing the evidence as a whole, the error did not substantially influence the verdict or impair the fairness of the trial." *Medina v. People*, 114 P.3d 845, 857 (Colo.2005). We "disregard any error or defect not affecting the substantial rights of the parties." C.A.R. 35(e).

■ When an appellant fails to preserve an error for review by raising a contemporaneous objection, we review only for plain error. *People v. Miller*, 113 P.3d 743, 749 (Colo.2005). Plain errors are those that so undermine the fundamental fairness of a trial they cast doubt on the reliability of the conviction. *Id.* at 750.

As noted above, only the "were they lying" questions were objected to at trial. At trial, Liggett did not object to the "mistaken" questions or the prosecutor's remarks during closing arguments. Accordingly, the former are reviewed for harmless error and the latter are reviewed for plain error.

■ In the context of a bench trial, the prejudicial effect of improperly admitted evidence is generally presumed innocuous. "[T]here is a presumption that all incompetent evidence is disregarded by the court in reaching its conclusions, and the judgment will not be disturbed unless it is clear that the court could not have reached the result but for the incompetent evidence." *People v. Kriho*, 996 P.2d 158, 172 (Colo.App.1999) (citing *People v. Mascarenas*, 181 Colo. 268, 509 P.2d 303 (1973)).

### 1.

■ We first consider whether the prosecutor's "were they lying" questions constituted reversible or merely harmless error. *See Medina*, 114 P.3d at 857.

There are only two instances where the prosecutor asked Liggett whether Holman had lied—first in regard to the stolen checks, and second in regard to Liggett's credentials. Liggett's responses during both exchanges did not engender many of the problems we noted earlier, as he avoided calling Holman a liar and provided alternative explanations. The exchanges are as follows:

Q: So what you're saying is Bob Holman was lying?

A: That would be an inference, yes.

Q: And, you're saying that we should believe you. You're saying that Bob gave them to you.

A: That is correct.

Q: So when he sat up here and said that, he was lying?

A: No, I'm not saying that. What I'm saying is that I think that he assumed that that might have been my salary. I never specifically told him how much I was making. I think he might have assumed how much I was making at that point in time.

Liggett's responses do not excuse the impropriety of the questioning. They do, however, considerably lessen their prejudicial impact.

Although the questions and Liggett's responses were admitted, we presume that the trial court did not accord any weight to this evidence. While this presumption is somewhat weakened given that the trial court overruled Liggett's objection, the presumption is still appropriate, as the trial court did not accord weight to the improper statements in its decision. *See People v. Fulton*, 754 P.2d 398, 400 (Colo.App.1987) ("In a trial to the court there is a presumption that all incompetent evidence is disregarded by the court in reaching its conclusions, but this presumption generally does not apply if the trial court accords weight to the improper evidence in its decision." (citing *Koon*, 713 P.2d 410)).

As shown by the court's findings, the trial court had ample evidence to support Liggett's convictions and did not accord weight to the improper statements. On the theft charge, the court found:

> The evidence showed that Mr. Liggett had no authority to take these monies inasmuch as the complaining witness, Ms. Mitchell, testified that this check was drawn without authorization ... it was critical that when the defendant knew that these funds were improperly drawn to his order for payment, that he made some indication of an acknowledgement that these funds were Affiliated [Business Brokers's] and had to be repaid or at least offer some agreement to repay them.

> Instead, the evidence shows that there was no such acknowledgement of effort to repay or offer of an agreement to repay these funds. So the Court finds that there is a case in theft made out by the prosecution's evidence.

The court went on to find Liggett had the requisite intent because he was on reasonable notice and inquiry that the check was not drawn or signed by Holman, and in the course of ordinary business, Liggett was not authorized to receive funds from Affiliated Business Brokers. This showed "guilty knowledge," and the court found Liggett's claim "that he was lawfully in possession of the check to be untenable and not supported by any reasonable inference in the evidence." The court concluded the evidence on the theft charge was sufficient beyond a reasonable doubt. On this charge, the court declined to explicitly discuss credibility altogether, much less the prosecutor's improper remarks or Liggett's responses to them.

As to the forgery charge, the trial court recognized that the prosecution's evidence was circumstantial. The court then reviewed the circumstances surrounding the issuance of the check and the testimony and credibility of the various witnesses. The court's specific findings regarding credibility do not afford any weight or attention to the prosecutor's improper remarks or exchanges noted above. The court states in relevant part:

> Now, this came down to the credibility of the defendant versus the credibility of Mr. Holman as to what happened in the sales transactions and as to whether there was a reasonable alternate explanation in the evidence for the issuance of this check to Mr. Liggett.

> And that leaves the strong inferences to be drawn, on a computer program, and his failure to return the funds and his failure to produce the note that allegedly said the check was waiting for him, and I find that this is satisfactory beyond a reasonable doubt to show that the defendant did make this check and that this check was in accordance with the charge, a check that resulted in a loss of money to Affiliated [Business Brokers] and affected their legal rights and interest and obligations at the bank and that the check that was drawn was drawn on the Affiliated [Business Brokers's] account.

The trial court summarized its findings as follows:

> And that leaves the strong inferences to be drawn from the circumstances of the defendant's access, his opportunity to draw the check, his expertise to draw it as drawn, on a computer program, and his failure to return the funds and his failure to produce the note that allegedly said the check was waiting for him, and I find that this is satisfactory beyond a reasonable doubt to show that the defendant did make this check ...

Although the court addressed the conflicting accounts provided by Holman and Liggett and found that Holman was a credible witness, there was no suggestion in the record that this finding was based upon the improper remarks made at trial. Rather, the court's findings relied upon the testimony offered by the prosecution's witnesses, the lack of evidence supporting Liggett's version of events, and numerous other facts and circumstances which strongly supported Holman's testimony and undermined Liggett's version of events.

Liggett has not shown that but for the incompetent evidence the court would not have reached its result. And, as evident from the findings of the trial court, the error

did not substantially influence the verdict or impair the fairness of the trial. Because the trial court's findings appear unaffected by the admission of the incompetent evidence, we find the admission of the "were they lying" questions and Liggett's attendant responses was harmless.

### 2.

■ Next, we consider the "mistaken" questions posed to Liggett. As Liggett failed to raise a contemporaneous objection at trial, we review only for plain error. *Miller*, 113 P.3d at 749.

When the prosecutor asked if Holman must have been mistaken in his belief that there was no written employment contract, Liggett simply answered in the affirmative. Although the remarks went to credibility generally, they were not particularly damaging in context, as the subject matter of the questions was largely peripheral to issues before the court. Further, the assertion that Holman was mistaken was less damaging than the later questions calling for assertions that Holman was lying. Regardless, these remarks were improper. However, the court's findings did not take these remarks into account and Liggett has not shown that they are a "but for" cause of the court's decision. Thus, when viewed in context and under a plain error standard, asking Liggett whether Holman was mistaken did not so undermine the fundamental fairness of a trial as to cast doubt on the reliability of the conviction.

### 3.

■ Last, Liggett challenges the prosecutor's comments during closing argument suggesting Holman was credible and that Liggett was a "con man." Again, we review only for plain error as Liggett failed raise a contemporaneous objection at trial. *Miller*, 113 P.3d at 749.

■ Prosecutorial misconduct in closing argument rarely constitutes plain error. *People v. Gordon*, 32 P.3d 575, 581 (Colo. App.2001). To constitute plain error, "the misconduct must be flagrantly, glaringly, or tremendously improper, and it must so un-

dermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *Id.* Accordingly, a prosecutor enjoys considerable latitude. *See id.*

Although we do not condone the prosecutor's characterization of Liggett as a con man or his statement to the effect that Holman was believable, we do not find they constitute reversible error. In *People v. Mason*, 643 P.2d 745, 750–52 (Colo.1982), this court found that where a prosecutor contrasted the defendant's extrajudicial statements with his trial testimony and referred to the defendant as a con man during closing argument, such remarks were improper but not so prejudicial as to require reversal of the defendant's conviction. Similarly, the remarks here were made in the context of comparing Liggett's version of events with the conflicting testimony of several witnesses including Holman. The prosecutor's comments did not spark an objection from Liggett and did not appear to play a role in the court's findings. Further, Liggett has not shown how these statements affected the trial court's decision or otherwise impeded upon the fairness of the trial.

Accordingly, we perceive no plain error and find that the remarks did not endanger Liggett's right to a fair trial.

### III. Conclusion

Consistent with our holding above, we affirm the decision of the court of appeals and uphold Liggett's conviction.

Justice EID does not participate.