22CA0051 Peo v Goodall 11-07-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA0051
El Paso County District Court No. 18CR6923
Honorable Michael P. McHenry, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Rodger Dean Goodall,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE JOHNSON
Fox and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 7, 2024

---

Philip J. Weiser, Attorney General, Brian M. Lanni, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Rodger Dean Goodall (Goodall), appeals the judgment of conviction entered on jury verdicts finding him guilty of thirteen counts of sexual assault on a child.  Goodall contends that the district court erred by (1) permitting an expert to testify that child victims rarely lie about abuse allegations; (2) allowing the prosecutor to imply that Goodall tailored his testimony to the evidence at trial; and (3) admitting evidence of a prior child sexual assault because it was too remote in time.  He also alleges cumulative error.  We reject all his contentions, and thus affirm his judgment of conviction.

I.     Background

¶ 2     The victim, J.D., then five years old, would often visit the home of her step-grandmother, S.G, with her stepsiblings.  S.G. operated an at-home daycare.  J.D.'s step-grandfather, Goodall, did not live at S.G.'s home because of his 1999 sexual assault conviction involving J.D.'s aunt and Goodall's biological daughter, M.R.  But Goodall was permitted to be at S.G.'s home during certain hours of the day.  A "buddy system" was also put in place when he visited the home so that Goodall would not be alone with either the daycare children or his grandchildren.

¶ 3     When J.D. was in her teens, she disclosed to M.R., her father, her stepmother, a school counselor, and eventually the police that Goodall had sexually assaulted her from the ages of seven to eleven. She explained that she did not report the abuse earlier because she thought she would forget and that the memories would "go away."

¶ 4     The prosecution charged Goodall with fifteen counts of sexual assault on a child (five counts — position of trust with the victim under 15; five counts — position of trust; and five counts — pattern of abuse) and one count of habitual sex offender against children. Goodall's theory of defense was that he could not have committed the offenses because of the "buddy system" and that J.D. was fabricating the allegations with M.R. being the "driving force" behind the lies. The jury convicted Goodall of thirteen counts of sexual assault on a child but acquitted him on the counts relating to what was referred to as the "computer room incident." The district court sentenced Goodall to thirty-six years to life in the custody of the Department of Corrections, plus indeterminate lifetime parole.

## II.    The Expert Witness Testimony

¶ 5    Goodall contends that the prosecution's expert impermissibly testified that (1) only two to eight percent of sex misconduct allegations by kids are false and (2) kids do not usually lie about sex assault.  Under the circumstances of this case, we conclude that defense counsel invited the error.

### A.    Additional Facts

¶ 6    The prosecutor endorsed as an expert witness, Steffanie Walstra (Walstra), who was qualified in the field of child sex abuse and victim response to trauma.  Walstra told the jury she had no knowledge of specific facts about the case, that she had never met J.D, and that she could not opine as to whether J.D. had been sexually assaulted.  She affirmed that her role as an expert witness was to "educate."

¶ 7    During cross-examination, defense counsel asked Walstra whether she had "ever treated someone who falsely reported."  Walstra responded by saying, "I have not.  Not that I know of."  Defense counsel followed up by asking, "But you know that happens, correct?"  To that, Ms. Walstra replied, "In a — in about 2 to 8 percent of cases there's false reports."  Defense counsel then

asked, "And it does happen?" Ms. Walstra replied, "Very minimally."

¶ 8 Later, defense counsel asked Walstra that a victim "changing details [about the abuse] can also be a sign of deception in individuals, can it not?" Walstra replied, "I suppose so." Defense counsel then inquired, "Okay. Generally, across the board, if people change details about events it can be a sign of deception; would you agree with me?" In response, Walstra testified, "I would agree that people change their stories in order to deceive people. I don't agree with that in regards to children sharing about sexual assault." Defense counsel further probed, "Because your viewpoint is that everything that [the victims] share is truthful and reliable?" Walstra responded, "I think kids lie about a lot of things, but not typically sexual abuse." Finally, defense counsel asked Walstra, "And that's the opinion [that kids do not lie about sexual assault] . . . you approach your practice with, correct?" Walstra agreed, saying, "Yes."

¶ 9 On redirect, the prosecutor asked Walstra where she obtained the two to eight percent figure, and she responded, "There was a study that was done by the FBI a while ago, that they found that

false reporting happened in a range of as low as 2 and as high of 8 percent of cases." Defense counsel did not object to this question.

## B.    Analysis

¶ 10    "[A] party may not complain on appeal of an error that [s]he has invited or injected into the case." *People v. Zapata*, 779 P.2d 1307, 1309 (Colo. 1989); *accord People v. Jones*, 2023 COA 104, ¶ 62; *McGill v. DIA Airport Parking, LLC*, 2016 COA 165, ¶ 9; *Sheridan Redevelopment Agency v. Knightsbridge Land Co.*, 166 P.3d 259, 266 (Colo. App. 2007); *see also People v. Rediger*, 2018 CO 32, ¶¶ 34-40 (discussing the doctrines of invited error and waiver). Such an error bars appellate review. *Rediger*, ¶ 3. For two reasons, we decline to review this contention because defense counsel invited any error.

¶ 11    First, *People v. Marx,* 2019 COA 138 — relied on by Goodall — is distinguishable on two bases. In *Marx*, a division of this court concluded that it was reversible plain error when the prosecutor elicited from an expert that children who are sexually abused generally do not lie about such allegations and that such instances occur only about two to eight percent of the time. *Id.* at ¶ 23; *see also People v. Wittrein*, 221 P.3d 1076, 1081 (Colo. 2009) ("[E]xperts

may not offer their direct opinion on a child victim's truthfulness or their opinion on whether children tend to fabricate sexual abuse allegations."). Because only the victim and the defendant testified as fact witnesses in *Marx,* the victim's credibility was central to the defendant's theory of defense. *Marx,* ¶ 5. Specifically, the defendant sought to raise questions about the victim's alleged false reporting of prior sexual assault incidents. *Id.* at ¶ 37. The lack of any other evidence was one of the main reasons the *Marx* division found reversible error. *Id.* at ¶¶ 17, 22.

¶ 12     Here, though, there were multiple witnesses who testified that the "buddy system" was not always enforced when Goodall was present at S.G.'s home and at the daycare where children were present, allowing for opportunities when he might have been alone with J.D. And M.R. testified that Goodall had sexually assaulted her in a similar manner and during the same age range as J.D. J.D. had testified that Goodall justified his actions toward her by saying, "It's okay, it's ok, this is normal and stuff like that." M.R. testified that "as soon as [J.D.] told me what was said to her . . . it was almost the exact same words he told me when he first started molesting me."

¶ 13    *Marx* is also distinguishable because the testimony was elicited by defense counsel during cross-examination.  We acknowledge that the expert's testimony Goodall challenges is generally impermissible.  But this situation is more akin to *Wittrein* than *Marx*.

¶ 14    In *Wittrein* — also involving allegations of sexual abuse on a child — the prosecution's expert testified about the concept of "hyper-reporting" and that such reports might result from fabrication or extreme trauma.  221 P.3d at 1081.  On cross-examination, defense counsel asked whether "hyper-reporting" could be a result of a child wanting to be portrayed as a victim, to which the expert replied that it was "hard for [her] to imagine that an eight-year-old child would be able to put together such a plan." *Id.*  The supreme court held that, while the expert's testimony was improper, it was a foreseeable response to defense counsel's question.  *Id.* at 1082.  As a result, any error had been invited.  *Id.*

¶ 15    Similarly, Walstra's responses to defense counsel's questions were not only foreseeable, but strategically suggested that Walstra's preconceived views that children rarely lie about sexual abuse influenced her opinions in the case.  *See id.*; *see also People v.*

*Shackelford*, 511 P.2d 19, 20 (Colo. 1973) (defense counsel invited any error by asking open-ended questions on cross-examination that resulted in an undesirable response); *People v. Rogers*, 2012 COA 192, ¶ 22 ("We conclude that in this case defense counsel intentionally opened the door to the Confrontation Clause violation by her strategic trial decision to introduce the non-testifying driver's hearsay statement. Accordingly, defendant has waived the right to challenge the admission as error."); *People v. McKibben*, 862 P.2d 991, 994 (Colo. App. 1993) ("[A]ny error occasioned in the cross-examination of the prosecution's expert witness was invited error. The witness responded within the scope of defense counsel's question."). And defense counsel asked follow-up questions about children's propensity to be deceptive or change stories when lying, which elicited further foreseeable responses from the expert. For example, it was foreseeable that when pushed by defense counsel to disagree that children often lie about many things, Walstra reiterated that although this might generally be true, they generally are not deceptive concerning sexual abuse.

¶ 16     We acknowledge that the prosecutor mentioned the percentages testified to on redirect, but this was in response to

8

information raised on cross-examination.  Therefore, defense counsel's questioning was strategic and intentional.  *See People v. Gross*, 2012 CO 60M, ¶ 9 (an invited error must be knowing and strategic in nature, not a result of defense counsel's incompetence or inadvertence).

¶ 17     Nonetheless, Goodall disagrees, contending that because the parties engaged in contentious pretrial litigation concerning the boundaries of the expert testimony, there was no strategy and thus the error is preserved, or it should be reviewed for plain error.  He relies on *Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322, 1330 (Colo. 1986), which concluded that when "a specific evidentiary issue is presented to the trial court in advance of trial," then "the primary purposes of the contemporaneous objection rule — to permit the trial court to accurately evaluate the legal issues and to enable the appellate court to apprehend the basis of the objection — are satisfied."  But the parties' "thoroughly litigated" scope of the testimony dealt with the expert's status as a generalized expert and the parties knew the testimony should not "go beyond the forensic realm."  Thus, we disagree that the district court was put on notice that the expert's testimony — even if generally improper — exceeded

the bounds of the parties' agreement as to the nature of the expert's testimony.

¶ 18　　Second, defense counsel did not move to strike Walstra's responses or seek a limiting instruction from the court. Generally, when a witness testifies about information that is improper, counsel must either object or seek to strike the testimony. *See People v. Rodriguez-Morelos*, 2022 COA 107M, ¶ 37 (an appellate court reviews whether a court properly denied a motion to strike witness testimony for an abuse of discretion) (*cert. granted* Sept. 25, 2023); *People v. Herdman*, 2012 COA 89, ¶¶ 58-59 (the court erred by denying a motion to strike a witness's testimony that was deemed irrelevant to the case); *People v. Krueger*, 2012 COA 80, ¶ 67 n.5 (the court did not err by failing to give curative instruction because it was not requested even though the defendant objected immediately and sought to strike the witness's improper testimony). Because defense counsel did neither, and because as we discussed above, such testimony appeared to be a strategic choice, the court was under no obligation to intervene to correct an error that defense counsel invited.

¶ 19    Thus, because defense counsel invited the error, we decline to address this contention further.

### III.    Tailored Testimony

¶ 20    Goodall contends that the prosecutor engaged in misconduct when he implied during cross-examination that Goodall had tailored his testimony to the evidence presented at trial. We disagree.

### A.    Standard of Review and Applicable Law

¶ 21    We engage in a two-step analysis to review claims of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). The first step in our review of prosecutorial misconduct asks if the prosecutor's actions were in fact improper. *Id.* at 1096. The second step asks whether such actions warrant reversal according to the proper standard of review. *Id.* We must also determine whether there was a contemporaneous objection at trial. *Id.* at 1097.

¶ 22    Colorado law recognizes two categories of "tailoring" arguments: (1) generic tailoring and (2) specific tailoring. Generic tailoring — which is improper — occurs when the prosecutor "attacks the defendant's credibility by 'simply drawing the jury's

11

attention to the defendant's presence at trial and his resultant opportunity to tailor his testimony,' without 'referenc[ing] any instances in the record where the defendant actually engaged in tailoring.'" *People v. Knapp*, 2020 COA 107, ¶ 57 (alteration in original) (citation omitted). Specific tailoring, which is proper, suggests that a defendant may make "specific elements of his testimony to fit with particular testimony given by other witnesses." *Id.* (citation omitted).

## B.    Analysis

¶ 23    Goodall testified in his own defense. During his cross-examination, the prosecutor asked, "You've been able to sit here in the courtroom this entire trial and listen to every single witness?" Goodall responded, "Yes." The prosecutor then asked, "And so you knew what [M.R.] had already told law enforcement before your testimony here." Goodall replied, "Yes." The prosecutor asked, "And you've been able to use that information to craft your responses here today?" Goodall responded, "I didn't use her information to craft any responses. I'm just telling the truth. The fact that I did sexually molest my daughter. And regardless of what you're saying, it doesn't change the fact that I did it."

12

¶ 24     We agree with the Attorney General that the prosecutor's questions were specific to M.R.'s testimony and the police reports surrounding his prior sexual assault conviction.  At most, then, the prosecutor's questions fell within the category of specific tailoring.  But assuming this was general tailoring, we reject for two reasons that the prosecutor engaged in misconduct.

¶ 25     First, Goodall has not cited, nor are we aware of, any authority that analyzes specific or general tailoring contentions in the context of cross-examination.  The danger of general tailoring is that it typically occurs during a prosecutor's closing argument, so the defendant is unable to respond to such comments.  *See id.* at ¶¶ 55-56.  But during cross-examination, Goodall was able to respond and defend himself, including by owning up to the prior sexual assault.

¶ 26     Even so, Goodall relies on *People v. Liggett,* 135 P.3d 725, 729-33 (Colo. 2006), to support that a prosecutor may not question the defendant in a manner that puts him in a position to comment about the credibility of other witnesses' testimony, thus suggesting to the jury that the defendant must not be telling the truth.  But *Liggett* is inapposite.  *Liggett* deals with a witness's ability to opine

on the veracity of another witness's testimony by means of "were they lying" type questions; the case did not discuss the veracity of the witness's own testimony. *Id.* at 733. And the prosecutor did not ask Goodall whether he was lying or being untruthful.

¶ 27 Second, even assuming specific/general tailoring arguments apply to cross-examination, the prosecutor's questioning was proper. The prosecutor's questions followed testimony in which Goodall had, at times, denied sexually abusing his daughter or changing details that were not in the police reports. Therefore, the prosecutor did nothing more than highlight Goodall's inconsistent statements or point to contrary evidence.

IV.    Admission of Prior Sexual Offense

¶ 28 Goodall contends that the district court erred by admitting into evidence his prior sexual assault involving M.R. because it was so remote in time and the allegations were more egregious than J.D.'s allegations. We disagree.

A.    Standard of Review and Applicable Law

¶ 29 The district court's decision to admit evidence under CRE 404(b) is reviewed for an abuse of discretion. *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009). A court abuses its discretion in this

context when its ruling is manifestly arbitrary, unreasonable, or unfair, or based on a misunderstanding or misapplication of the law. *People v. Heredia-Cobos*, 2017 COA 130, ¶ 6.

¶ 30 Evidence of a defendant's other crimes, wrongs, or prior bad acts is not admissible to prove the defendant's bad character or propensity to commit crimes. CRE 404(b). This evidence may, however, be admissible for some other relevant purpose, such as to prove common plan, scheme, or design. *Yusem*, 210 P.3d at 463; *Adrian v. People*, 770 P.2d 1243, 1244 (Colo. 1989). The "prosecution must identify the specific purpose for which the evidence will be used . . . ." *Yusem*, 210 P.3d at 464.

¶ 31 Before admitting other acts evidence, the district court must be satisfied by a preponderance of the evidence that the other act occurred, and that the defendant committed it. CRE 104; *People v. Rath*, 44 P.3d 1033, 1039 (Colo. 2002). Next, the trial court must find that (1) the proffered evidence relates to a material fact; (2) the evidence is logically relevant; (3) the logical relevance is independent of any inference that the defendant has a bad character; and (4) the danger of unfair prejudice does not substantially outweigh the

probative value of the evidence. *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).

## B. Analysis

¶ 32 We conclude for five reasons that the district court did not err by admitting evidence of Goodall's prior sexual abuse.

¶ 33 First, there is no case law supporting that the interval of time between M.R.'s and J.D.'s abuse rendered the abuse of M.R. inadmissible. Indeed, the General Assembly has recognized that because sexual abuse may not be reported, "such offenders often commit numerous offenses involving sexual deviance over many years, with the same or different victims, and often . . . through similar methods or by common design." § 16-10-301(1), C.R.S. 2024. As a result, that body has also recognized that "in the prosecution of sexual offenses . . . there is a greater need and propriety for consideration by the fact finder of evidence of other relevant acts of the accused," which might include "any actions, crimes, wrongs, or transactions, whether isolated acts or ongoing actions and whether occurring prior to or after the charged offense." *Id.* "[S]uch evidence of other sexual acts is typically relevant and highly probative, and it is expected that normally the probative

16

value of such evidence will outweigh any danger of unfair prejudice, *even when incidents are remote from one another in time.*" *Id.* (emphasis added). Therefore, there is no per se time period that makes a prior sexual assault too remote.[1]

¶ 34    Second, Goodall's prior sexual abuse of M.R. satisfies the four-part *Spoto* test, as analyzed by the district court. The proffered evidence — prior sexual abuse of a child in a position of trust by Goodall — relates to a material fact, which was the sexual assault of a child of J.D., to whom he was in a position of trust as her step-grandfather. Both M.R. and J.D. testified to a common scheme or design with Goodall's abuse, including similar words Goodall used

---

[1] We agree with the Attorney General that Goodall did not object below to admission of the prior sexual abuse of M.R. on grounds that it was too remote in time. But as part of the relevancy inquiry for the other act evidence, the court must consider, among other factors, the remoteness of the event. *Adrian v. People*, 770 P.2d 1243, 1245-46 (Colo. 1989). Regardless, Colorado courts have affirmed admission of evidence of sexual offenses that took place during comparable time intervals. *See, e.g., id.* at 1244 (affirming the admission of similar sexual assaults fifteen to nineteen years prior); *People v. Shores*, 2016 COA 129, ¶ 48 (affirming the admission of dissimilar sexual assault "nearly two decades" prior); *People v. Larson*, 97 P.3d 246, 249 (Colo. App. 2004) (affirming the admission of similar sexual assaults more than twenty-five years prior), *overruled on other grounds by Vensor v. People*, 151 P.3d 1274, 1277 (Colo. 2007).

to justify his actions, the ages of the girls when the abuse took place, and similar types of sexually abusive actions committed by Goodall. Although the prior abuse was not the exact offense as alleged in the current case, it was sufficiently similar to be relevant. The logical relevance of the sexual assaults was independent of any inference that Goodall has a bad character because they were pertinent to Goodall's similar manner of abuse. And the prior abuse was highly probative of the current sex assault of J.D. as one of the charges against him was a habitual sex offender against children. Therefore, we discern no abuse of discretion by the district court by admitting the sexual abuse of M.R. under *Spoto*.

¶ 35 Third, the district court adequately considered and determined that the probative value of the prior sexual assault outweighed the risk of undue prejudice under CRE 403. Defense counsel conceded that the prosecution could admit evidence involving the early stages of M.R.'s abuse, including the sexual touching and grooming for the purposes of showing a pattern of abuse and to show that he "said the same things."

¶ 36 But defense counsel's primary objection concerned admission of the sexual intercourse between Goodall and M.R., which defense

counsel argued was highly prejudicial and not similar to J.D.'s allegations. But the other act evidence does not need to be identical to the charged offenses. *People v. Lahr*, 2013 COA 57, ¶ 18. And the district court ruled that if details of the sexual intercourse appeared to deviate too far from the common scheme and plan exception of Rule 404(b), the court would handle it or stop the inquiry at the appropriate time. There is no indication in the record that defense counsel raised a further objection about the detail or scope of M.R.'s testimony involving Goodall's sexual abuse.

¶ 37    Fourth, the jury acquitted Goodall of the "computer room incident." A split verdict is "an indication that the jurors exercised some discretion in their deliberations and did not blindly convict the defendant based upon inferences drawn from the nature of [a] conviction." *Martin v. People*, 738 P.2d 789, 796 (Colo. 1987); *see also People v. Larsen,* 2017 CO 29, ¶ 16 ("[H]ad a juror been exposed to the prejudicial information and therefore decided Larsen had a propensity for sexually assaulting young female relatives, it would have been reflected by across-the-board guilty convictions."). Here, the split verdict suggests that the jury considered the evidence for each of the five alleged sexual assault incidents, as

opposed to simply convicting Goodall based solely on M.R.'s testimony.

¶ 38     Fifth and finally, the district court appropriately instructed the jury on the limited purpose for which it could consider M.R.'s testimony three times verbally (before testimony, at the close of evidence, and in a written jury instruction). We must presume the jury followed the court's instructions, *see People v. Chase*, 2013 COA 27, ¶ 37, and Goodall has pointed to nothing in the record suggesting otherwise. In addition, the court reiterated to the jury before closing arguments and defense counsel restated in closing argument that M.R.'s testimony was admitted for a limited purpose. *See Kaufman v. People*, 202 P.3d 542, 553 (Colo. 2009) (when a district court admits other act evidence, it must instruct the jury on the limited purpose for which the jury may use the information).

¶ 39     Accordingly, we discern no reversible error.

## V.     Cumulative Error

¶ 40     Reversal for cumulative error applies in criminal cases where there are numerous formal irregularities, but none individually warrants reversal. *Howard-Walker v. People*, 2019 CO 69, ¶ 24; *People v. Roy*, 723 P.2d 1345, 1349 (Colo. 1986). But numerous

errors must be committed; merely asserting numerous errors is insufficient. *People v. Shannon*, 2024 COA 41, ¶ 34. Because we have discerned no errors, Goodall's cumulative error contention fails.

## VI. Conclusion

The judgment of conviction is affirmed.

JUDGE FOX and JUDGE SCHOCK concur.