**[J-10-2025] [OAJC: Mundy, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 46 EAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 954 EDA |
| | : | 2022 entered on November 14, |
| v. | : | 2023, affirming the Judgment of |
| | : | Sentence of the Philadelphia County |
| | : | Court of Common Pleas at No. CP- |
| RASHEED MALCOLM, | : | 51-CR-0001309-2020 entered on |
| | : | March 28, 2022. |
| Appellant | : | |
| | : | ARGUED: March 5, 2025 |

**CONCURRING OPINION**

**JUSTICE McCAFFERY**                                        **DECIDED: February 18, 2026**

Today, the Opinion Announcing the Judgment of the Court (OAJC) concludes that no new categorical rule is necessary to address the problems created by the admission of out-of-court statements opining on the credibility of another person's out-of-court statements. I agree, but that is because it is clear under our existing Rules of Evidence that the trial court erred in admitting the out-of-court opinions of the detectives in this case. Implicit in the OAJC is the suggestion that improperly admitted lay opinion testimony regarding the credibility of a defendant can be alleviated by a curative or cautionary instruction. I disagree with this contention. I see no circumstances under which such testimony should be considered. Therefore, it should have been excluded. However, under the limited circumstances of this case, I agree that its admission did not constitute reversible error and would not have changed the jury verdict. The crux of the case before

us is the video evidence shown to the jury and the corresponding identification of the defendant portrayed in it by Officer Lamana. Accordingly, I concur in the result only.

Malcolm's issue is premised upon Rule 403 of our Rules of Evidence.[1] *See* Appellant's Brief at 20. Rule 403 provides that a court may exclude otherwise relevant evidence if the probative value of the evidence is outweighed by the danger that the evidence causes unfair prejudice, thereby allowing the jury's decision to be based on something other than the evidence. *See* Pa.R.E. 403 and *Comment*. Thus, any analysis of the issue must, at the very least, address: (1) the **relevance** of the evidence at issue; and (2) whether it poses a danger that the jury will decide the case on an improper basis. Only once we have identified these two concerns can we possibly begin to weigh them against each other.

Malcolm objects to the statements of Detectives Burns and Harkins in his recorded interrogation, not the admission of his own statements. *See* Appellant's Brief at 21. In particular, Malcolm objects to the 13 statements detailed by the OAJC at page 8. At the outset, we must ask what, if any, relevance these out-of-court statements possess. The OAJC opines the detectives' statements are "relevant to determining whether Malcolm was guilty … and to assess[ing] the credibility of not only Malcolm, but also the detectives." OAJC at 17. Simply stated, the OAJC identifies three distinct bases for relevance: (1) Malcolm's guilt; (2) Malcolm's credibility; and (3) the detectives' credibility.

I will address these in reverse order. It is immediately obvious that Detective Harkins's credibility is not itself relevant to any issue at trial, because Detective Harkins did not testify at the trial. Detective Burns's credibility is at least arguably relevant, as he

---

[1] Pa.R.E. 403 provides: "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

did testify. However, the OAJC makes no attempt to describe how the thirteen challenged statements affect Detective Burns's credibility. This failure is not surprising, given Detective Burns's concession that he sometimes misleads suspects to gain incriminating statements from them. *See* N.T., 3/24/2022, at 116. The challenged statements, grouped together, reflect Detective Burns's disbelief in Malcolm's answers to his questions. The OAJC makes no attempt to explain how the **detective's beliefs** about Malcolm's credibility are relevant to the jury's assessment of the detective's credibility. Nor can I conceive of any logical link between the detectives' opinions on Malcolm's credibility and the jury's duty to assess Detective Burns's credibility. To the extent that the challenged statements are relevant to Detective Burns's credibility, then, their relevance is at most *de minimis*.

A similar analysis applies to the OAJC's second proffered basis for relevance: Malcolm's credibility. The OAJC once again fails to connect the dots in its analysis. There is no legal basis under our precedent for the relevance of a witness's opinion about the credibility of another witness. Indeed, our courts have consistently prohibited such opinions, even when based upon scientific expertise. *See Commonwealth v. Alicia*, 92 A.3d 753 (Pa. 2014); *Commonwealth v. Yockey*, 158 A.3d 1246, 1255 (Pa. Super. 2017). Here, there is no allegation Detective Burns's opinion is grounded in any sort of expertise. Even worse, there is no assertion that the detective's opinion is grounded in personal knowledge. *See* Pa.R.E. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). To the extent the detective believed Malcolm was the perpetrator, such belief was grounded not in the detective's personal knowledge, but in statements made by others, primarily Officer Lamana.

Thus, the detectives should have been precluded from offering such opinions from the witness stand. The OAJC fails to explain why testimony that is not allowed under oath in court is nevertheless admissible as substantively relevant when uttered out-of-court. One of the most fundamental tenets of Pennsylvania law is that:

> The veracity of a particular witness is a question which must be answered in reliance on the ordinary experiences of life, common knowledge of the natural tendencies of human nature, and observations of the character and demeanor of the witness. **As the phenomenon of lying is within the ordinary capacity of jurors to assess, the question of a witness's credibility is reserved exclusively for the jury.**

*Alicia*, 92 A.3d at 761 (citations and brackets omitted; emphasis added). "The jury still have duties to perform. Inferences drawn from the ordinary affairs of life ought not to be drawn for them, and turned over under oath from the witness stand." *Commonwealth v. Seese*, 517 A.2d 920, 921 (Pa. 1986) (citation omitted). "[W]here the circumstances can be fully and adequately described to the jury, and are such that their bearing on the issue can be estimated by all men, without special knowledge or training, **opinions of witnesses, expert or other, are not admissible**." *Auberle v. City of McKeesport*, 36 A. 212, 212 (Pa. 1897) (emphasis added). Under existing precedent, the detectives' statements have no probative value as to Malcolm's credibility. As the Supreme Court of Colorado explained, a witness's beliefs about the veracity of another person's statements are of little to no relevance:

> [A]sking a witness to comment on the veracity of another witness offers little or no probative value. This kind of questioning seeks information beyond the witness's competence. And, where the witness expresses a belief as to the veracity of another witness, that statement of belief is simply irrelevant; it does nothing to make the inference that another witness lied any more or less probable.

*Liggett v. People*, 135 P.3d 725, 731 (Colo. 2006) (internal citations omitted).

This leaves us with the OAJC's final assertion of relevance: Malcolm's guilt. Much as set out above, the OAJC does not explain how an out-of-court statement of lay opinion,

not based on personal knowledge, is admissible, let alone relevant. I cannot agree with the OAJC's conclusion that the detectives' statements, some of which Detective Burns admitted were inaccurate, are relevant to the question of Malcolm's guilt.

At best, the detectives' out-of-court statements have *de minimis* relevance to the issues at trial. I thus turn to whether these statements create a risk the jury could decide the case on an improper basis.

I conclude that statements — especially out-of-court statements made by people who appear to be neutral third parties — which opine on the credibility of out-of-court statements made by another person pose significant dangers that are well-recognized in Pennsylvania law. Our courts have consistently rejected the use of **expert** opinion to bolster or attack credibility, noting that such opinions create a risk that the jury will abandon its exclusive role as judges of credibility in deference to the opinion testimony. *See Alicia*, 92 A.3d at 761 ("expert testimony on the matter would infringe upon the jury's ability and responsibility to assess the credibility of the child witness"); *Commonwealth v. Spence*, 627 A.2d 1176, 1182 (Pa. 1993) ("Whether the expert's opinion is offered to attack or enhance, it assumes the same impact[ — ]an unwarranted appearance of authority in the subject of credibility which is within the facility of the ordinary juror to assess." (internal quotation marks and citation omitted)); *Commonwealth v. O'Searo*, 352 A.2d 30, 32 (Pa. 1976) ("To permit psychological testimony for th[e purpose of determining the credibility of a witness] would be an invitation for the trier of fact to abdicate its responsibility to ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment."). Here, the detectives were not qualified as experts on issues impacting credibility — they were merely expressing their own **lay** opinions on the subject.

While this Court has not recently addressed the relevance of **lay** opinion testimony regarding the credibility of another person, our precedent from over 100 years ago repeatedly devalued such testimony. *See Auberle*, *supra*; *see also Graham v. Pa. Co.*, 21 A. 151, 153 (Pa. 1891). Further, our Superior Court has addressed this precise issue in two precedential opinions in the last decade. In *McClure*, the panel cited to this Court's decisions prohibiting **expert** testimony to support its conclusion that a detective's opinion on the defendant's credibility was inadmissible:

> Although [*Commonwealth v. Crawford*, 718 A.2d 768 (Pa. 1998)] and *Seese* involved experts inappropriately offering opinions on credibility, the same principle can be applied to a police officer whose testimony a jury could find an unwarranted appearance of authority in the subject of credibility, something ordinary jurors are able to assess. As the Commonwealth acknowledged, the fact [the detective] charged [the a]ppellant with the crimes suggests that he did not believe [the a]ppellant. However, allowing him to express opinions that neither he nor the CYS employee believed [the a]ppellant is not only irrelevant but also prejudicial.

*Commonwealth v. McClure*, 144 A.3d 970, 977 (Pa. Super. 2016) (citations, internal quotation marks, and footnote omitted). For similar reasons, a later panel of the Superior Court concluded that questions seeking a witness's opinion as to whether another person was lying "are generally prohibited in Pennsylvania." *Yockey*, 158 A.3d at 1256.

The Supreme Court of Colorado identified yet another problem caused by allowing a witness to opine that another person is lying:

> [T]his form of questioning ignores alternative explanations for evidentiary discrepancies and conflicts that do not involve lying. There may be differences in opinion, lapses or inaccuracies in memory, differences in perception, a misunderstanding, or any other number of wholly innocent explanations for discrepancies between one witness's testimony and another's.
>
> …
>
> [W]hile it is appropriate to juxtapose conflicting accounts of the facts and ask the fact-finder to resolve the dispute, it is not appropriate to compound that task by implying that the fact-finder must determine one or more of the witnesses is lying. This effectively distorts the government's burden of proof. In the criminal setting, this is particularly problematic as the fact-

finder may assume that an acquittal turns upon finding that the other witness or witnesses lied.

*Liggett*, 135 P.3d at 731-732 (citations omitted).

Here, the opinions on Malcolm's credibility were not uttered by an expert witness. Thus, the danger of an unwarranted appearance of authority is admittedly lessened. But the danger of the jury abdicating its function as the sole assessor of credibility is not eliminated, especially when the declarant may be seen as a neutral third party, such as (but not limited to) a police officer. This danger is compounded by several factors addressed above. For example, while neither detective was proffered as an expert witness on credibility, it is also true that neither detective was under oath at the time they uttered their opinions. Further, Detective Burns conceded some of his statements in the recording were misleading. Moreover, Detective Harkins did not testify at trial and thus was not available for cross-examination regarding his out-of-court statements. These circumstances enhance the risk that his out-of-court statements will cause unfair prejudice.

When examined carefully, it is apparent the unfair prejudice to Malcolm outweighed the *de minimis* probative value of these unsworn lay opinions on Malcolm's credibility. I agree fully with the analysis in *McClure* — while it is clear that the detectives did not believe Malcolm's account in light of the subsequently filed charges, their (admittedly not-always-truthful) unsworn opinions provide no probative value to balance against the significant danger of unfair prejudice. Thus, the admission of these unsworn statements was error.

I acknowledge that Malcolm's statements in the video may be difficult to parse in the absence of the detectives' questions. Had **Malcolm** sought to present the video to the jury (and assuming the video was otherwise admissible), the Commonwealth would

have had grounds to seek to present other parts of the video to the jury.[2] *See* Pa.R.E. 106. However, these issues are hypothetical under the facts of this case.

In sum, despite my disagreement with the OAJC about the admissibility and relevance of the detectives' statements, I believe the jury's verdict would not have been different in any event.[3] The crux of the factual dispute before the jury was the identity of the shooter. The primary component of this dispute was whether Malcolm was the man in the video recordings observed leaving the scene of the crime. The jury was able to observe Officer Lamana and judge his credibility. Officer Lamana identified Malcolm in the video and was cross-examined. The jury was able to watch the videos themselves and perform their own assessment of whether Officer Lamana's identification of Malcolm was credible. The trial court instructed the jury that it was their responsibility to evaluate the video and determine what it showed. *See* N.T., 3/22/2022 at 105; 3/25/2022 at 166 ("During the trial you saw a video in this matter. Sometimes there was narration by the detective in this case. What you see in the video. You are the judge of the facts, so you make that determination."). Under these circumstances, I conclude that the erroneous admission of the detectives' opinions on Malcolm's credibility did not affect the jury's verdict. As such, I would affirm the judgment of sentence, albeit on different grounds from the OAJC.

Justice Dougherty joins this concurring opinion.

---

[2] Ordinarily, Malcolm would have to testify to present the video to the jury. I present this simplified hypothetical to point out the flaw in the Commonwealth's argument. Relatedly, I am at a loss to understand why a prosecutor would choose to introduce a defendant's exculpatory video statement where he denies involvement in a particular crime. Normally, a prosecutor would want such denials to come from the defendant, on the witness stand subject to cross-examination.

[3] The Commonwealth argues in its brief that "[t]he admission of the unredacted interrogation was harmless in light of the curative instructions and the untainted identification evidence." Commonwealth's Brief at 12.